861 F.2d 1406
 57 USLW 2353, 10 Employee Benefits Ca 1488
 AMALGAMATED CLOTHING & TEXTILE WORKERS UNION, AFL-CIO;
Samuel Faulkner; Ruby Craver; Catherine Wilhoit;
Melvin L. Smith; Willie James Ratliff;
Flora M. Caldwell,
Plaintiffs-Appellants,
v.
David H. MURDOCK; Harold M. Messmer, Jr.; Timothy F.
Finley; Branson C. Jones; William S. Fisher; Harold D.
Kingsmore; John H. Ketner, Jr.; Fieldcrest Cannon, Inc.;
Cannon Holding Corp.; Continental Illinois National Bank &
Trust Company of Chicago, Defendants-Appellees.
 No. 87-5654.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 6, 1988.
Decided Nov. 22, 1988.
 
 Stuart Libicki, Schwartz, Steinsapir, Dohrmann & Sommers, Los Angeles, Cal., for plaintiffs-appellants.
 Henry C. Thumann, O'Melveny & Myers, Los Angeles, Cal., for defendants-appellees David H. Murdock and Cannon Holding Co.
 Gregory P. Stone, Munger, Tolles & Olson, Los Angeles, Cal., for defendants-appellees Timothy F. Finley, Branson C. Jones, William S. Fisher, Harold D. Kingsmore and John H. Ketner, Jr.
 Denise M. Parga, Mayer, Brown & Platt, Los Angeles, Cal., for defendant-appellee Continental Illinois Nat. Bank and Trust Co. of Chicago.
 Patricia A. Timko, Latham & Watkins, Los Angeles, Cal., for defendant-appellee Fieldcrest Cannon, Inc.
 Nancy J. Skovholt, Robert B. Flaig, Nancy J. Skovholt, Thelen, Marrin, Johnson & Bridges, Los Angeles, Cal., for defendant-appellee Harold M. Messmer, Jr.
 Appeal from the United States District Court for the Central District of California.
 Before PREGERSON, CANBY and WIGGINS, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 This is an action for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974, 29 U.S.C. Secs. 1001-1381 (1982) (ERISA). Plaintiffs contend that the district court erred in ruling that ERISA provides no remedy for breach of the fiduciary duty of loyalty after ERISA plan participants and beneficiaries have received their actuarially vested plan benefits. We hold that (1) when an ERISA fiduciary has profited by breaching his duty of loyalty to an ERISA plan, and (2) where imposing a constructive trust on the ill-gotten profits in favor of plan participants and beneficiaries is the only means available to deny the fiduciary his ill-gotten profits, a district court may impose a constructive trust on the ill-gotten profits and distribute them to plan participants and beneficiaries, even after they have received their actuarially vested plan benefits. We therefore reverse the district court's ruling to the extent it holds that a constructive trust remedy was unavailable.
 
 
 2
 * BACKGROUND
 
 
 3
 The following facts were accepted as true for purposes of the district court proceedings.
 
 
 4
 Plaintiffs were participants in a voluntary employee benefit plan within the meaning of 29 U.S.C. Sec. 1002(35).[1] The plan was funded by employer contributions as actuarially necessary to provide plan benefits. At any point, the sponsoring employer could unilaterally amend or terminate the plan. Plan assets, however, were to be used for the exclusive benefit of plan participants and beneficiaries.
 
 
 5
 The complaint alleges that plan fiduciaries breached their duty of loyalty to the plan by using plan assets to further the interests of David H. Murdock, another plan fiduciary, rather than to further solely the interests of the plan participants and beneficiaries as required by ERISA. The pattern of abuse alleged in the complaint is as follows.
 
 
 6
 Murdock controlled, either directly or indirectly, substantial stock in two companies. In response to Murdock's influence, plan fiduciaries used plan assets to acquire additional stock in these two companies. Murdock then allegedly manipulated the combined stock holdings to "greenmail"[2] the two companies. Both companies paid a substantial premium to repurchase their stock and to prevent a takeover.
 
 
 7
 Plaintiffs in their complaint allege that this transaction involved a breach of the ERISA fiduciary duty of loyalty because "[plan] assets were invested and held ... and thereby put at risk not for the exclusive benefit of the Plan's participants and beneficiaries as required by the Plan and the Trust, but for the benefit of [one of the fiduciaries]." (Emphasis added.) Specifically, the complaint alleges that the fiduciaries breached the duty of loyalty expressed in ERISA Secs. 403(c)(1), 404(a)(1), 405(a)(2), 406(a)(1), (b), 29 U.S.C. Secs. 1103(c)(1), 1104(a)(1), 1105(a)(2), 1106(a)(1), (b).[3]
 
 
 8
 Murdock allegedly profited from this breach in two ways. First, the companies repurchased stock Murdock owned or controlled at a premium in part because of the extra leverage he gained by allegedly manipulating the plan's stock. To the extent Murdock profited by obtaining any premium attributable to this extra leverage, he profited from the fiduciaries' breach of their duty of loyalty.
 
 
 9
 Second, Murdock allegedly profited by acquiring the premium the plan received from the stock repurchases. Murdock obtained this money by causing the plan to be amended, and then taking steps to terminate the plan and have its surplus assets distributed to him.
 
 
 10
 Before it was amended, the plan provided that only surplus generated by "erroneous actuarial computation" would revert to the sponsor of the plan upon the plan's termination. The amendment to the plan provided that any and all surplus held by the plan would revert to the sponsor.
 
 
 11
 After the plan was amended, Murdock allegedly stepped into the shoes of the plan's sponsor through a series of business transactions. Thereafter, he sought to terminate the plan by causing plan participants and beneficiaries to be paid the monies they were actuarially due under the plan. After the participants and beneficiaries were paid, Murdock allegedly collected the plan's surplus pursuant to the plan amendment. The plan's surplus allegedly included several million dollars--in cash and in kind--of profits attributable to the greenmail transactions. Total profits flowing from the fiduciaries' breach of the duty of loyalty are alleged to be in the tens of millions of dollars.
 
 
 12
 Plaintiffs seek damages as well as the imposition of a constructive trust on the alleged ill-gotten profits realized by Murdock as a result of the fiduciaries' breach of ERISA's duty of loyalty.
 
 
 13
 The defendants filed motions to dismiss and in the alternative motions for summary judgment. It appears that the district court treated the motions as motions to dismiss under Fed.R.Civ.P. 12(b)(6) and accepted as true the facts stated in the complaint.[4]
 
 
 14
 The district court dismissed the action, concluding that ERISA provides no constructive trust remedy or other relief after plan participants and beneficiaries have been paid their actuarially vested plan benefits. The court also held that neither the plan's amendment nor its alleged termination constituted a breach of fiduciary duty. We reverse only the court's legal conclusion concerning the availability of a constructive trust remedy.
 
 II
 STANDARD OF REVIEW
 
 15
 We review de novo the district court's determination to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Nieto v. Ecker, 845 F.2d 868, 870 (9th Cir.1988). We take the allegations of material fact as true and construe them in the light most favorable to plaintiffs. Id. (citing Western Reserve Oil & Gas Co. v. New, 765 F.2d 1428, 1430 (9th Cir.1985), cert. denied, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 773 (1986)).
 
 III
 DISCUSSION
 A. Standing and Constructive Trust Remedy
 
 16
 This case raises two interrelated questions. First, do ERISA plan participants and beneficiaries have standing to seek a constructive trust remedy after they have received their actuarially vested plan benefits. Second, may the res of a constructive trust be distributed to plan participants and beneficiaries.
 
 
 17
 Ordinarily, standing is a "threshold question ... [that] determin[es] the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). In this case, however, to resolve the question of standing, we must first decide whether the constructive trust remedy sought is available to plaintiffs.
 
 
 18
 ERISA provides that an ERISA plan "participant" or "beneficiary" has standing to bring a civil action under ERISA Sec. 502(a), 29 U.S.C. Sec. 1132(a),[5] when that person "is or may become eligible to receive a benefit of any type from an employee benefit plan." ERISA Sec. 3(7), 29 U.S.C. Sec. 1002(7) (emphasis added) (defining "participant"); ERISA Sec. 3(8), 29 U.S.C. Sec. 1002(8) ("The term 'beneficiary' means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.").[6] In the course of deciding whether plaintiffs have standing--i.e., whether they may become eligible to receive a benefit of any type from an ERISA plan--we must decide (1) whether the court may impose a constructive trust on a fiduciary's alleged ill-gotten profits and distribute those profits to plan participants and beneficiaries; and (2) whether this distribution may be construed as "a benefit of any type from an employee benefit plan." Id. Because these questions are inextricably linked, we treat them together.
 
 
 19
 Defendants argue that plaintiffs are no longer plan "participants" who can maintain a cause of action under ERISA because they received all their actuarially vested plan benefits. They base this argument on Kuntz v. Reese, 785 F.2d 1410 (9th Cir.), cert. denied, 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986). In Kuntz we held that plan participants and beneficiaries have no standing to seek monetary damages for breach of fiduciary duty after they receive their contractually defined and vested benefits from an ERISA plan.[7] Id. at 1411-12. We reasoned that legal damages could not be considered "a benefit of any type from an employee benefit plan." Id. at 1411. Therefore, the plan participants and beneficiaries in Kuntz had no standing to maintain a cause of action because they were not "participants" who "may become eligible to receive a benefit of any type from an employee benefit plan." Id. (quoting ERISA Secs. 3(7), 502(a)(1), 502(a)(2), 29 U.S.C. Secs. 1002(7), 1132(a)(1), 1132(a)(2)).
 
 
 20
 Our reasoning in Kuntz does not deprive plaintiffs of standing to seek a constructive trust remedy in this case. Unlike the suit in Kuntz, this action seeks equitable relief. More importantly, Kuntz did not address a situation where, as here, a fiduciary allegedly obtained profits by breaching his duty of loyalty to an ERISA plan. As we shall demonstrate, granting plaintiffs standing to seek a constructive trust remedy in this case is the only means available to give effect to the goals of ERISA. Before we discuss Kuntz and resolve the standing issue, we turn to the goals of ERISA and the remedies available to achieve those goals.
 
 
 21
 One of the overriding goals of ERISA is to prevent the misuse and mismanagement of plan assets by fiduciaries. See Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 140-43 & n. 8, 105 S.Ct. 3085, 3089-91 & n. 8, 87 L.Ed.2d 96 (1985) (discussing congressional purpose of establishing judicially enforceable standards to ensure honest, faithful, and competent management of ERISA plan assets). To achieve that goal, ERISA Sec. 409(a), 29 U.S.C. Sec. 1109(a),[8] requires a fiduciary to disgorge to an employee benefit plan any profits he makes through improper use of the plan's assets. Id. ("a fiduciary ... shall be personally liable ... to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan").
 
 
 22
 Section 409(a) reflects ERISA's adoption of common law trust principles. As we noted in Nieto v. Ecker, 845 F.2d 868, 872 (9th Cir.1988), "Congress derived the Act's provisions relating to fiduciaries from the common law of trusts." It is a well-established trust principle that a fiduciary may not profit by his breach of the duty of loyalty.
 
 
 23
 The Restatement (Second) of Trusts defines the duty of loyalty in terms similar to those used in ERISA Sec. 404(a)(1), 29 U.S.C. Sec. 1104(a)(1). Under the Restatement, the trustee's duty of loyalty is his "duty to the beneficiary to administer the trust solely in the interest of the beneficiary." Sec. 170 (1957). ERISA Sec. 404(a)(1) states that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. Sec. 1104(a)(1). This duty is also reflected in ERISA Secs. 403(c)(1), 405(a)(2), 406(a)(1), (b), 29 U.S.C. Secs. 1103(c)(1), 1105(a)(2), 1106(a)(1), (b) (set forth in the Appendix to this opinion).
 
 
 24
 Under the Restatement, when a trustee breaches his duty of loyalty, the beneficiary may bring suit to recover any profits made by the trustee through the breach of his duty to the trust. See Sec. 205(b) comment (h), Sec. 206 comment (j). ERISA's duty of loyalty provisions have been similarly interpreted: "If ERISA fiduciaries breach their duties by risking trust assets for their own purposes, beneficiaries may recover the fiduciaries' profits made by misuse of the plan's assets." Leigh v. Engle, 727 F.2d 113, 122 (7th Cir.1984) (discussing at length the duty of loyalty under ERISA).
 
 
 25
 The purpose behind this rule is to deter the fiduciary from engaging in disloyal conduct by denying him the profits of his breach. G. Bogert and G. Bogert, The Law of Trusts and Trustees Sec. 543, at 218 (2d ed. 1978). If there is no financial incentive to breach, a fiduciary will be less tempted to engage in disloyal transactions. Id. The purpose of the rule is not to make beneficiaries whole for any damages they may have suffered. In fact, whether beneficiaries have been financially damaged by the breach is immaterial. G. Bogert & G. Bogert, supra, Sec. 543, at 217. Rather, the objective is to make "disobedience of the trustee to the [duty of loyalty] so prejudicial to him that he and all other trustees will be induced to avoid disloyal transactions in the future." Id. at 218.
 
 
 26
 The key to removing a fiduciary's financial incentive to breach his duty of loyalty is to make sure that the fiduciary is not allowed to keep any ill-gotten profits. Whether the ill-gotten profits are returned to an ERISA plan or ultimately distributed to plan participants and beneficiaries is not critical to effective deterrence. What is critical is denying the fiduciary any ill-gotten profits.
 
 
 27
 ERISA Sec. 409(a) explicitly provides that a fiduciary shall "restore to [the employee benefit] plan" any ill-gotten profits obtained by breaching a fiduciary duty. 29 U.S.C. Sec. 1109(a) (emphasis added). This is consistent with ERISA's goal of protecting employee benefit plans as entities. See Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 140-42, 105 S.Ct. 3085, 3089-90, 87 L.Ed.2d 96 (1985) (ERISA Sec. 409(a) focuses on the fiduciary's relationship to the employee benefit plan and on protecting the plan).
 
 
 28
 This case, however, presents a unique problem. Here, distribution of alleged ill-gotten profits to the plan[9] would not deny one of the allegedly culpable fiduciaries (Murdock) those profits. This is because the plan in this case, as amended, provided that its sponsor (Murdock's predecessor in interest) would receive any plan surplus not needed to pay plan participants and beneficiaries their actuarially vested plan benefits. The surplus in the plan, including profits resulting from the fiduciaries' alleged breach of the duty of loyalty, exceeded the amount actuarially required to pay plan benefits. Thus, if alleged ill-gotten profits were returned to the plan through imposition of a constructive trust, the plan's own provisions would recycle those profits back to one of the allegedly culpable fiduciaries (Murdock) because the plan already satisfied its actuarial obligations.
 
 
 29
 To break this cycle, and to deny the fiduciary his alleged ill-gotten profits, plaintiffs suggest that the court has authority to distribute the ill-gotten profits to plan participants and beneficiaries. They suggest two statutory bases for this authority.
 
 
 30
 First, plaintiffs argue that the catchall equitable relief provision in ERISA Sec. 409(a) permits distribution of the alleged ill-gotten profits to plan participants and beneficiaries. In addition to explicitly authorizing the imposition of a constructive trust on a fiduciary's ill-gotten profits in favor of an ERISA plan,[10] section 409(a)'s catchall provision states that a fiduciary who has breached his duty to a plan "shall be subject to such other equitable or remedial relief as the court may deem appropriate." ERISA Sec. 409(a), 29 U.S.C. Sec. 1109(a). Plaintiffs contend that this catchall clause may be used to impose the remedy they seek.
 
 
 31
 Alternatively, plaintiffs suggest that a similar catchall equitable relief provision in ERISA Sec. 502(a)(3), 29 U.S.C. Sec. 1132(a)(3), authorizes a constructive trust in favor of plan participants and beneficiaries. ERISA Sec. 502(a)(3) is a broad remedial provision which states that a civil action may be brought "(A) to enjoin any act or practice which violates any provision of this subchapter or terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan...." Id. (emphasis added).
 
 
 32
 There is no doubt that, in general, a constructive trust remedy is available under the catchall relief provisions of both ERISA Sec. 409(a) and Sec. 502(a)(3). Nieto v. Ecker, 845 F.2d 868, 874 (9th Cir.1988) (constructive trust available under catchall provision of ERISA Sec. 502(a)(3)); see Sokol v. Bernstein, 803 F.2d 532, 538 (9th Cir.1986) ("appropriate equitable relief" includes the three remedies of injunction, constructive trust, and removal) (interpreting a phrase in Sec. 502(a)(3), which also appears in Sec. 409(a)--"other equitable or remedial relief as the court may deem appropriate" ). We must decide whether either or both of these sections allows the particular constructive trust remedy plaintiffs seek: a constructive trust on alleged ill-gotten profits in favor of plan participants and beneficiaries even after they have received their actuarially vested plan benefits.
 
 
 33
 Defendants argue that there are two barriers to the relief plaintiffs seek. First, they contend that a constructive trust may not be imposed for the benefit of plan participants and beneficiaries. Second, they assert that plaintiffs may not seek any relief at all once they have received their actuarially vested plan benefits. We are not persuaded by either of these arguments.
 
 
 34
 Defendants chiefly cite Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), and Sokol v. Bernstein, 803 F.2d 532 (9th Cir.1986), for the proposition that a constructive trust in favor of plan participants and beneficiaries may not be imposed on ill-gotten profits obtained by a fiduciary. They argue that these cases strictly limit all relief for breaches of fiduciary duty to remedies that run only to ERISA plans and not to plan participants and beneficiaries.
 
 
 35
 Some of the language used in both Russell and Sokol could be viewed as consistent with defendants' position. But those opinions do not hold that the constructive trust relief plaintiffs seek is unavailable. More importantly, the reasoning used in both Russell and Sokol to limit the availability of damages to individual plan participants and beneficiaries supports the imposition of a constructive trust in favor of all plan participants and beneficiaries under the facts of this case.
 
 
 36
 The facts of Russell are as follows. The plaintiff in Russell received disability benefits pursuant to an ERISA plan. While the plaintiff was disabled, plan fiduciaries mishandled her benefit claim and delayed her disability payments by approximately five months. Eventually, the plaintiff received all her benefits. However, she allegedly suffered emotional and financial damages during the five months her benefits were delayed. 473 U.S. at 136-37, 105 S.Ct. at 3087-88.
 
 
 37
 To recover her damages, the plaintiff sued the fiduciaries under the catchall relief provision of ERISA Sec. 409(a).[11] ERISA does not explicitly authorize suits by plan beneficiaries against fiduciaries to recover damages for the mishandling of benefit claims. Accordingly, the plaintiff in Russell asked the court to use the catchall relief provision of ERISA Sec. 409(a) to create a damage remedy. Id. at 137-38, 105 S.Ct. at 3087-88.
 
 
 38
 After analyzing ERISA's text and legislative history, the Supreme Court in Russell concluded that the catchall relief provision of Sec. 409(a) is a limited rather than a broad remedial clause. Section 409(a) authorizes relief only when a fiduciary has breached one of the duties to an employee benefit plan defined in ERISA. Id. at 142-44, 105 S.Ct. at 3090-91. As we discuss more fully below, that is exactly what plaintiffs allege occurred here. They allege that the fiduciaries breached the ERISA duty of loyalty expressed in ERISA Secs. 403(c)(1), 404(a)(1), 405(a)(2), 406(a), (b), 29 U.S.C. Secs. 1103(c)(1), 1104(a)(1), 1105(a)(2), 1106(a), (b). When a fiduciary has breached one of his statutorily defined duties to an ERISA plan, then the catchall relief provision of Sec. 409(a) may be used to fashion a remedy that "inures to the benefit of the plan as a whole." Id. at 140, 105 S.Ct. at 3089.
 
 
 39
 The Court rejected the Russell plaintiff's request to create an individual remedy for damages under Sec. 409(a) because that type of remedy was not consistent with ERISA's emphasis on the relationship between a fiduciary and the employee benefit plan as a whole. A fiduciary's mishandling of an individual benefit claim does not violate any of the fiduciary duties defined in ERISA. Id. at 142, 105 S.Ct. at 3090. Moreover, while mistakes in handling one claim may interfere with one person's benefits under a plan, they do not jeopardize the entire plan or put at risk plan assets, which must be safeguarded to protect all beneficiaries. Accordingly, the Court concluded that Sec. 409(a) may not be used to award extracontractual compensatory or punitive damages to an ERISA plan beneficiary when a fiduciary mishandles the beneficiary's claim to benefits. Id. at 148, 105 S.Ct. at 3093.
 
 
 40
 The reasoning used by the Court in Russell leads us to believe that the imposition of a constructive trust on a fiduciary's ill-gotten profits in favor of all plan participants and beneficiaries is an important, appropriate, and available form of relief under ERISA Sec. 409(a), particularly when it is the only means of denying a fiduciary ill-gotten profits that flow from the breach of his duty of loyalty to the entire ERISA plan. In the case before us, the fiduciaries allegedly breached one of the duties to an employee benefit plan that lies at the core of ERISA--the duty of loyalty. In breaching that duty, the fiduciaries abused and put at risk assets belonging to the entire ERISA plan, not just benefits due an individual plan beneficiary. Plaintiffs seek relief on behalf of all plan participants and beneficiaries, not to compensate them for damages suffered, but to deny the fiduciaries profits from their alleged breach and thereby to deter future breaches of ERISA's duty of loyalty. We believe that Russell supports this equitable relief under ERISA Sec. 409(a).
 
 
 41
 In Russell, the Court interpreted Sec. 409(a) by looking to (1) ERISA's legislative history, (2) the text of Sec. 409(a), (3) fiduciary duties defined in ERISA, and (4) beneficiaries' rights defined in ERISA. At each stage of its analysis, the Court decided that ERISA's text and legislative history failed to support the Russell plaintiff's request for a compensatory damage cause of action. We find that each element of ERISA examined by the Court in Russell supports the relief plaintiffs request in this case.
 
 
 42
 First, the Court noted in Russell that "the crucible of congressional concern [in enacting ERISA] was misuse and mismanagement of plan assets by plan administrators." 473 U.S. at 140 n. 8, 105 S.Ct. at 3089 n. 8. ERISA "was designed to prevent these abuses in the future." Id. The Court cited numerous congressional documents and the remarks of several lawmakers to indicate that the protection of plan assets was one of ERISA's key goals:
 
 
 43
 [T]he legislation imposes strict fiduciary obligations on those who have discretion or responsibility respecting the management, handling, or disposition of pension or welfare plan assets.... In addition, frequently the pension funds themselves are abused by those responsible for their management who manipulate them for their own purposes or make poor investments with them.... This legislation ... sets fiduciary standards to insure that pension funds are not mismanaged.
 
 
 44
 Id. (citations omitted) (emphasis added) (quoting Sen. Williams, Sen. Ribicoff, and Sen. Clark).
 
 
 45
 In contrast to the clear expression of concern regarding the handling of plan assets, the Court noted that the legislative history did not reflect an equal degree of concern for the handling of individual benefit claims. Id. at 142, 105 S.Ct. at 3090. Therefore, the Court concluded that the legislative history did not lend support to the plaintiff's request in Russell that the Court create under the catchall relief provision of ERISA Sec. 409(a) a cause of action for extracontractual damages to remedy a fiduciary's mishandling of an individual benefit claim. Id. at 144, 105 S.Ct. at 3091.
 
 
 46
 In this case, the plaintiffs ask us to create under the catchall relief provision of ERISA Sec. 409(a) an equitable remedy that will deny a fiduciary alleged ill-gotten profits obtained by abusing employee benefit plan assets. The abuse or misuse of plan assets for the benefit of a fiduciary is precisely the type of abuse ERISA was enacted to redress and prevent. In fact, it was the "crucible of congressional concern" out of which the Act emerged. Id. at 140 n. 8, 105 S.Ct. at 3089 n. 8. Thus, the legislative history amply supports a remedy for this abuse.
 
 
 47
 Second, the Court focused on the language of ERISA Sec. 409(a). Id. at 140-42, 105 S.Ct. at 3089-90. It observed that "when the entire section is examined, the emphasis on the relationship between the fiduciary and the plan as an entity becomes apparent." Id. at 140, 105 S.Ct. at 3089. Because the specific remedial provisions of Sec. 409(a) "provid[e] relief singularly to the plan," the Court concluded that "its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary." Id. at 142, 105 S.Ct. at 3090. Accordingly, the Court in Russell did not think it was appropriate to use the catchall remedial provision of ERISA Sec. 409(a) to create a remedy that would protect only individual beneficiaries rather than the entire benefit plan or all plan participants and beneficiaries.
 
 
 48
 Again, the case before us presents the type of breach that primarily concerned the draftsmen of Sec. 409(a) and the Court in Russell: the misuse of plan assets. The remedy plaintiffs seek--imposition of a constructive trust on alleged ill-gotten gains in favor of all plan participants and beneficiaries--is the only remedy, under the facts of this case, that can redress the abuse of this plan's assets and protect future plans from similar patterns of abuse.
 
 
 49
 As the Court noted, ERISA was enacted to ensure that "pension funds are not mismanaged." 473 U.S. at 140 n. 8, 105 S.Ct. at 3089 n. 8 (quoting statement of Sen. Clark, reprinted in 120 Cong.Rec. 29,194 (1974)). Here, fiduciaries allegedly mismanaged pension funds by "manipulat[ing] them for their own purposes" rather than for the exclusive purpose of protecting plan beneficiaries' interests. Id. (quoting statement of Sen. Ribicoff, reprinted in 120 Cong.Rec. 29,957 (1974)). At least one fiduciary may have profited by this alleged breach--perhaps obtaining millions of dollars--and now defendants claim that ERISA provides no remedy to deny the fiduciary these alleged ill-gotten profits because ERISA Sec. 409(a) can be invoked only to return ill-gotten profits to the plan. If the ill-gotten profits were returned to the plan, they would recycle immediately back to one of the allegedly culpable fiduciaries because he allegedly amended the plan to ensure that he would receive all surplus plan assets.
 
 
 50
 As a means of breaking this cycle, and denying the fiduciary alleged ill-gotten profits, plaintiffs suggest imposing a constructive trust on the alleged ill-gotten profits in favor of plan participants and beneficiaries. They seek this relief not as individuals but to redress the abuse of this plan's assets and to protect future plans from similar misuse. We believe this relief is consistent with the purpose and text of ERISA Sec. 409(a) and the Supreme Court's holding in Russell.
 
 
 51
 Third, the Court in Russell examined the fiduciary duties defined in ERISA, and found that they too stressed the fiduciary's relationship to employee benefit plans rather than to individual plan beneficiaries. Id. at 142-44, 105 S.Ct. at 3090-91. It observed, for example, that ERISA Sec. 404(a)(1) "mandates that 'a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries.' " Id. at 143 n. 10, 105 S.Ct. at 3091 n. 10 (quoting ERISA Sec. 404(a)(1), 29 U.S.C. Sec. 1104(a)(1)) (emphasis added). In contrast, ERISA defines no duties regarding the handling of individual benefit claims. The statute merely notes that fiduciaries must comply with regulations promulgated by the Secretary of Labor. Thus, the Court found no support in ERISA's fiduciary duty provisions for the individual damage remedy sought by the plaintiff in Russell. Id. at 144, 105 S.Ct. at 3091.
 
 
 52
 Once again, the duty of loyalty allegedly breached by the fiduciaries in this case is explicitly incorporated in several ERISA provisions. See ERISA Secs. 403(c)(1), 404(a)(1), 405(a)(2), 406(a), (b), 29 U.S.C. Secs. 1103(c)(1), 1104(a)(1), 1105(a)(2), 1106(a), (b) (set forth in the Appendix to this opinion). Here, the fiduciaries allegedly failed to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries." ERISA Sec. 404(a)(1), 29 U.S.C. Sec. 1104(a)(1) (emphasis added). Unlike the obligation at issue in Russell--to process individual benefit claims in a timely manner--which is reflected only in the Secretary's regulations, the duty of loyalty allegedly breached by the fiduciaries in this case lies at the core of ERISA. According to the reasoning used in Russell, breaches of the duty of loyalty may appropriately be the subject of equitable relief under Sec. 409(a).
 
 
 53
 Finally, the Court in Russell observed that "the statutory provision explicitly authorizing a beneficiary to bring an action to enforce his rights under the plan" omitted any mention of extracontractual damages or "the possible consequences of delay in the plan administrators' processing of a disputed claim." 473 U.S. at 144, 105 S.Ct. at 3091. In short, the Court found that "there really is nothing at all in the statutory text [of ERISA] to support the conclusion that ... a delay [in the payment of employee plan benefits] gives rise to a private right of action for compensatory or punitive relief." Id.
 
 
 54
 ERISA Sec. 409(a) specifically requires a fiduciary to give back to an employee benefit plan any ill-gotten profits he earns through a breach of his duties to the plan.[12] The constructive trust remedy plaintiffs seek merely tailors the remedy already contained in Sec. 409(a) to fit the situation that exists here where a return of the alleged ill-gotten profits to the plan would not deprive an allegedly culpable fiduciary of those profits. Thus, unlike the remedy sought in Russell, the remedy in this case is linked to the terms of ERISA and the rights it grants to beneficiaries.
 
 
 55
 In summary, every one of the elements of ERISA analyzed in Russell--the legislative history, the text of Sec. 409(a), the statutory duties of fiduciaries, and the statutory rights of beneficiaries--supports the imposition of a constructive trust on the alleged ill-gotten profits in favor of plan participants and beneficiaries in this case where that is the only available means of removing the ill-gotten profits from a culpable fiduciary's hands.
 
 
 56
 Under the defendants' interpretation of Sec. 409(a) and Russell--i.e., that Sec. 409(a) authorizes only a constructive trust in favor of the plan--a fiduciary can breach one of ERISA's fundamental duties, gain millions of dollars in profits as a result of the breach, and walk away from the plan with impunity. We do not believe that Russell approves of such a result. The Court in Russell was not dealing with the situation presented by this case when it suggested that the catchall relief provision of Sec. 409(a) may appropriately be invoked to provide remedies only to ERISA plans and not to plan participants and beneficiaries. If Congress did not include the catchall relief provision in ERISA Sec. 409(a) to allow courts to remedy unforseeable methods of "misus[ing] and mismanag[ing] ... plan assets"--which the Supreme Court described as the "crucible of congressional concern" in enacting ERISA--then it is difficult to imagine why Congress included a catchall relief provision in Sec. 409(a).
 
 
 57
 Our holding in Sokol v. Bernstein, which involved ERISA Sec. 502(a)(3), 29 U.S.C. Sec. 1132(a)(3),[13] similarly supports the constructive trust remedy plaintiffs seek. In Sokol, we followed the Supreme Court's reasoning in Russell and decided that extracontractual damages are also not available to individual plan beneficiaries under the catchall equitable relief provision of ERISA Sec. 502(a)(3). 803 F.2d at 535-37. We reiterated that ERISA "focuses not on the direct protection of a beneficiary's interests, but on the protection of the integrity of the plan in which the beneficiary is enrolled." Id. at 536. "ERISA grants no private right of action by a beneficiary qua beneficiary; rather, it accords beneficiaries the right to sue on behalf of the entire plan if a fiduciary breaches the plan's terms." Id.
 
 
 58
 Defendants argue that Sokol precludes using Sec. 502(a)(3) to grant plaintiffs' remedy just as they argue that Russell precludes the use of Sec. 409(a). For the same reasons we rejected the defendants' arguments regarding Russell, we reject their interpretation of Sokol. The plaintiffs in this case bring suit not as "beneficiar[ies] qua beneficiar[ies]," but "on behalf of the entire plan" because the "fiduciar[ies] [allegedly] breache[d] the plan's terms," which incorporated ERISA's requirement that a fiduciary discharge his duties solely in the interests of the plan's participants and beneficiaries. 803 F.2d at 536; ERISA Secs. 403(c)(1), 404(a)(1), 405(a)(2), 406(a), (b), 29 U.S.C. Secs. 1103(c)(1), 1104(a)(1), 1105(a)(2), 1106(a), (b) (set forth in the Appendix to this opinion). According to the reasoning of Sokol this type of suit may be maintainable under Sec. 502(a)(3).
 
 
 59
 The remedy plaintiffs seek is also consistent with our congressional mandate under ERISA. "Congress ... intended that the courts 'draw on principles of traditional trust law' in formulating remedies for violations of ERISA's fiduciary standards." Nieto v. Ecker, 845 F.2d 868, 872 (9th Cir.1988) (quoting Donovan v. Mazzola, 716 F.2d 1226, 1235 (9th Cir.1983), cert. denied, 464 U.S. 1040, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984)). A constructive trust on the fiduciary's ill-gotten profits in favor of plan participants and beneficiaries is a remedy that would be available under traditional trust law to enforce the traditional trust principle that a fiduciary may not profit by his breach of the duty of loyalty. See Restatement (Second) of Trusts Sec. 205(b) comment (h), Sec. 206 comment (j) (1957). Thus, the remedy plaintiffs seek accords with traditional trust principles as well as the text and legislative history of ERISA.
 
 
 60
 For the foregoing reasons, we hold that plaintiffs, under the circumstances of this case, may seek a constructive trust on the alleged ill-gotten profits in favor of all plan participants and beneficiaries under either ERISA Sec. 409(a), 29 U.S.C. Sec. 1109(a)[14] or ERISA Sec. 502(a)(3), 29 U.S.C. Sec. 1132(a)(3).
 
 
 61
 Defendants also argue that plaintiffs may not seek any relief once they have received their actuarially vested benefits under the plan. This argument returns us to the standing discussion commenced at the beginning of this opinion. To determine whether plaintiffs have standing, we must decide whether a constructive trust in favor of plan participants and beneficiaries may be construed as a "benefit of any type from an employee benefit plan," even after plan participants and beneficiaries have received their actuarially vested plan benefits. ERISA Secs. 3(7), 502(a)(2), 502(a)(3), 29 U.S.C. Secs. 1002(7), 1132(a)(2), 1132(a)(3). The same factors that lead us to conclude that a constructive trust remedy is available to plaintiffs also lead us to conclude that plaintiffs have standing to sue a fiduciary under the circumstances of this case.
 
 
 62
 Plaintiffs and other plan participants and beneficiaries received their actuarially vested plan benefits when one of the plan fiduciaries allegedly caused the plan to be "terminated" and then collected the plan's surplus assets. Defendants contend that, even if plaintiffs had a cause of action against the fiduciaries before receiving their benefits, payment of the plan benefits rendered their causes of action moot. Defendants cite Kuntz v. Reese, 785 F.2d 1410 (9th Cir.), cert. denied, 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986), as authority for this proposition.
 
 
 63
 In Kuntz, we held that former plan participants and beneficiaries may not sue a fiduciary for damages after they receive their vested benefits under a plan. Under ERISA Sec. 502(a), 29 U.S.C. Sec. 1132(a), ERISA plan "participants" are empowered to bring civil actions to redress violations of the Act. ERISA Sec. 3(7), 29 U.S.C. Sec. 1002(7), defines a "participant" as
 
 
 64
 any employee or former employee of an employer or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan.
 
 
 65
 In Kuntz, we decided that damages for breach of fiduciary duty are not "a benefit of any type from an employee benefit plan," within the meaning of ERISA Sec. 3(7). We therefore held that former participants and beneficiaries who hope to obtain only damages from a lawsuit are not "participants" who have standing to sue under ERISA Sec. 502(a), 29 U.S.C. Sec. 1132(a).
 
 
 66
 There is a critical difference between Kuntz and the case before us. In Kuntz, the plaintiffs alleged that plan fiduciaries had "lied about the amount of benefits that plaintiffs would get under the plan and failed to comply with ERISA requirements for disclosing pension plan documents." 760 F.2d 926 (9th Cir.1985), vacated, 785 F.2d 1410 (9th Cir.), cert. denied, 479 U.S. 916, 107 S.Ct. 318, 93 L.Ed.2d 291 (1986). Unlike the case before us, the Kuntz plaintiffs did not allege that the fiduciaries personally profited from a breach of their duty of loyalty to the plan.
 
 
 67
 The key factor supporting plaintiffs' standing to sue in this case relates to the fiduciaries' alleged scheme to profit personally from the breach of the duty of loyalty. In this case, the alleged scheme to profit from the breach included payment of plan benefits and termination of the plan. It would be ironic if the very acts of benefit payment and plan termination that allegedly resulted in a fiduciary personally obtaining ill-gotten profits should also serve to deny plan beneficiaries standing to seek a constructive trust on those profits to redress the fiduciaries' alleged breach of the duty of loyalty.
 
 
 68
 A fiduciary has no legal right to retain profits obtained through breach of the duty of loyalty to an ERISA plan. It is appropriate for plan participants and beneficiaries to receive the fiduciary's ill-gotten profits because it was their plan benefits that were put at risk when the fiduciary allegedly breached the duty of loyalty and used plan assets to further non-plan interests. See Leigh v. Engle, 727 F.2d 113, 122 (7th Cir.1984) ("The nature of the breach of fiduciary duty alleged here is not the loss of plan assets but instead the risking of the trust's assets at least in part to aid the defendants in their acquisition program.").
 
 
 69
 A fiduciary should not be allowed to keep ill-gotten profits simply because plan participants and beneficiaries have been paid their actuarially vested plan benefits. This is particularly true when, as in this case, plaintiffs allege that the payment of plan benefits was part of the fiduciary's scheme to misuse plan assets and profit from that abuse.
 
 
 70
 In the circumstances of this case, were we to hold that payment of plan benefits cuts off the standing to sue of plan beneficiaries, we would, in effect, be saying that a fiduciary who (1) breaches the duty of loyalty to an ERISA plan, and (2) seeks to profit personally from that breach by terminating the plan, has the power to deprive plan beneficiaries of standing to sue the fiduciary for misuse of plan assets. Put simply, if under the circumstances of this case plaintiffs are denied standing, then fiduciaries may misuse ERISA plan assets and--by paying benefits and terminating the plan--personally profit from their breach of the duty of loyalty and insulate themselves from liability. Schemes like the one alleged in this case would be encouraged rather than deterred.
 
 
 71
 Kuntz does not approve such a result. We therefore hold that, for the limited purpose of granting plan participants and beneficiaries standing to sue in cases such as this one, ill-gotten profits held in a constructive trust for plan participants and beneficiaries may be construed as equitably vested benefits under an ERISA plan. Even after plan participants and beneficiaries have received their actuarially vested benefits from the plan, the plan should be viewed as continuing to exist for the purpose of distributing the equitably vested benefits.
 
 
 72
 Because the district court may find on remand that a constructive trust remedy is appropriate in the circumstances of this case, the plaintiffs "may become eligible to receive a benefit of any type from an employee benefit plan." ERISA Sec. 3(7), 29 U.S.C. Sec. 1002(7) (emphasis added). Accordingly, we conclude they have standing as participants to bring a civil action under ERISA Sec. 502(a), 29 U.S.C. Sec. 1132(a).
 
 B. Amendment and Termination of the Plan
 
 73
 Defendants argue that neither the plan's amendment, its alleged termination, nor the reversion to defendant Murdock of the plan's surplus constitute a breach of fiduciary duty. Defendants are correct in arguing that the amendment itself did not violate ERISA. Moreover, when a plan so provides, after satisfaction of all the plan's liabilities, reversion of the plan's surplus to the plan's sponsor is enforceable. 29 U.S.C. Sec. 1344(d)(1); see Schuck v. Gilmore Steel Corp., 784 F.2d 947, 950-51 (9th Cir.1986). Similarly, the decision to terminate a plan is a business decision and does not constitute a breach of fiduciary obligation. Cunha v. Ward Foods, Inc., 804 F.2d 1418, 1432-33 (9th Cir.1986); see also District 65, UAW v. Harper & Row, Publishers, Inc., 576 F.Supp. 1468, 1476-78 (S.D.N.Y.1983) (termination motivated solely by desire to recoup surplus assets does not violate ERISA fiduciary obligations).
 
 
 74
 The plan's amendment, its alleged termination, and the reversion of the plan's surplus by themselves do not constitute ERISA violations. But, such acts do constitute a claim upon which relief may be granted in the context of the complaint's further allegations that the fiduciaries misused plan assets to further interests other than the interests of the plan's participants and beneficiaries.
 
 C. Fieldcrest's Motion to Dismiss
 
 75
 Fieldcrest, which purchased the stock of one of the involved companies after the benefit plan was terminated,[15] contends that we should affirm the district court's judgment as to it because it never possessed a res that could be the subject of a constructive trust. Fieldcrest argues that under trust law it is not subject to the constructive trust remedy. We find this argument persuasive. The parties do not dispute Fieldcrest's contention that it never had possession or title to the money. Under the common law, a constructive trust remedy is, therefore, not available against Fieldcrest. See G. Bogert and G. Bogert, The Law of Trusts and Trustees Sec. 471, at 16 (2d ed. 1978) (defendant must have possession of wrongfully obtained title). Accordingly, we affirm the district court's judgment insofar as it granted Fieldcrest's motion to dismiss.
 
 
 76
 D. Continental Illinois National Bank's Motion to Dismiss
 
 
 77
 Continental Illinois National Bank & Trust Company contends that the plaintiffs are unable to state a claim for relief against it. This issue is not properly before us. Unlike the other defendants, Continental did not file a motion to dismiss with the district court. At the outset of the hearing, plaintiffs stipulated that a judgment in favor of the defendants would be applicable to Continental. Ordinarily, an issue not raised below will not be considered on appeal. Michael-Regan Co., Inc. v. Lindell, 527 F.2d 653, 659 (9th Cir.1975). Accordingly, Continental may argue its claim for dismissal on remand.
 
 IV
 CONCLUSION
 
 78
 The judgment is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion. Costs are awarded to plaintiffs.
 
 STATUTORY APPENDIX
 
 79
 ERISA Sec. 403(c)(1), 29 U.S.C. Sec. 1103(c)(1), provides:
 
 
 80
 (c) Assets of plan not to inure to benefit of employer; allowable purposes of holding plan assets
 
 
 81
 (1) Except as provided in paragraph (2), (3), or (4) or subsection (d) of this section, or under sections 1342 and 1344 of this title (relating to termination of insured plans), the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.
 
 
 82
 (Emphasis added.)
 
 
 83
 ERISA Sec. 404(a)(1), 29 U.S.C. Sec. 1104(a)(1), provides:
 
 
 84
 Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries
 
 
 85
 ....
 
 
 86
 (Emphasis added.)
 
 
 87
 ERISA Sec. 405(a)(2), 29 U.S.C. Sec. 1105(a)(2), provides:
 
 
 88
 (a) Circumstances giving rise to [fiduciary] liability
 
 
 89
 In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
 
 
 90
 ....
 
 
 91
 (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach;
 
 
 92
 ERISA Sec. 406(a)(1), (b), 29 U.S.C. Sec. 1106(a)(1), (b), provides:
 
 
 93
 (a) Transactions between plan and party in interest
 
 
 94
 Except as provided in section 1108 of this title:
 
 
 95
 (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--
 
 
 96
 (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
 
 
 97
 (B) lending of money or other extension of credit between the plan and a party in interest;
 
 
 98
 (C) furnishing of goods, services, or facilities between the plan and a party in interest;
 
 
 99
 (D) transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan; or
 
 
 100
 (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.
 
 
 101
 (b) Transactions between plan and fiduciary
 
 
 102
 A fiduciary with respect to a plan shall not--
 
 
 103
 (1) deal with the assets of the plan in his own interest or for his own account,
 
 
 104
 (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or
 
 
 105
 (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.
 
 
 106
 (Emphasis added.)
 
 
 
 [1]
 A union as well as individual plan participants brought this action. We refer here only to the plan participants because we conclude infra n. 6 that the union lacks standing
 
 
 [2]
 Greenmail has been described as follows:
 The sequence of events leading to [a greenmail] transaction typically begins when an investor purchases more than 5% of the stock of a target company. Within ten days of the purchase, the investor must file a Schedule 13D with the [Securities and Exchange Commission], declaring that he owns more than 5% of the target's stock and including, among other information, a statement that indicates the purpose of his investment. The 13D filing effectively notifies the target's directors and the public that the target could be the subject of a tender offer. The price of the target's stock usually rises following this announcement, as institutions and other shareholders sell their stock to speculators and arbitrageurs. In order to preempt a tender offer and prevent a takeover, the target's directors may then offer to repurchase the investor's shares at a premium above the market price. These targeted stock repurchases at premium prices have been labeled "greenmail" (as in "blackmail") payments.
 Note, Greenmail: Targeted Stock Repurchases and the Management-Entrenchment Hypothesis, 98 Harv.L.Rev. 1045, 1045 (1985) (citation omitted).
 
 
 [3]
 We assume for the purpose of this opinion that the fiduciaries breached their duty of loyalty to the plan as alleged in the complaint. See Fed.R.Civ.P. 12(b)(6). The ERISA duty of loyalty provisions allegedly breached by the fiduciaries are set forth in the Appendix to this opinion
 
 
 [4]
 The parties view this action as an appeal from a grant of summary judgment. Although the district court labeled its disposition a grant of summary judgment, our review of the record reveals that the district court treated the parties' motions as motions to dismiss. Key facts in the complaint--particularly regarding the fiduciaries' breach of the duty of loyalty--were accepted as true for purposes of the district court's ruling. Defendants indicate that they will contest those factual allegations if the case goes to trial on remand. We therefore believe we must review the district court's ruling as a Fed.R.Civ.P. 12(b)(6) dismissal of the complaint for failure to state a claim. C.f. Williams v. Pacific Maritime Ass'n, 384 F.2d 935 (9th Cir.1967), cert. denied, 390 U.S. 987, 88 S.Ct. 1181, 19 L.Ed.2d 1290 (1968) (the label placed by a district court on its ruling is not binding on the court of appeals)
 
 
 [5]
 ERISA Sec. 502(a), 29 U.S.C. Sec. 1132(a), is the civil enforcement provision that establishes who may bring a civil action under the Act. Two clauses of Sec. 502 are relevant to this case
 Section 502(a)(2) states that "[a] civil action may be brought by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." 29 U.S.C. Sec. 1132(a)(2). This section authorizes suits to obtain remedies for breach of fiduciary duty available under ERISA Sec. 409, 29 U.S.C. Sec. 1109. Here, plaintiffs invoke ERISA Sec. 502(a)(2) to seek the imposition of a constructive trust under the catchall relief provision of ERISA Sec. 409(a), 29 U.S.C. Sec. 1109(a).
 ERISA Sec. 502(a)(3) states that "[a] civil action may be brought by a participant, beneficiary, or fiduciary ... (B) to obtain other appropriate equitable relief (i) to redress ... violations [of this subchapter or the terms of the plan]." 29 U.S.C. Sec. 1132(a)(3). As an alternative to relief under ERISA Sec. 409(a), plaintiffs seek the imposition of a constructive trust under this catchall relief provision of ERISA Sec. 502(a)(3).
 
 
 [6]
 ERISA Sec. 502(a) does not provide an exhaustive list of eligible plaintiffs. See Fentron Indus. v. National Shopmen Pension Fund, 674 F.2d 1300, 1305 (9th Cir.1982). When a party is not within one of the groups listed in Sec. 502(a), he may still have standing if he (1) suffered an injury in fact, (2) arguably falls within the zone of interests protected by the statute allegedly violated, and (3) shows that the statute does not preclude suit. Id. at 1304 (relying on Association of Data Processing Serv. Org., Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)). The party must allege specific and personal injuries. Associated Builders & Contractors v. Carpenters Vacation & Holiday Trust Fund for No. Cal., 700 F.2d 1269, 1278 (9th Cir.), cert. denied, 464 U.S. 825, 104 S.Ct. 94, 78 L.Ed.2d 101 (1983)
 Amalgamated Clothing & Textile Workers Union, one of the plaintiffs in this appeal, lacks standing to bring this suit. It must rely on the Fentron analysis because it does not fall within any of the groups specified in ERISA Sec. 502(a). Because the union was never the designated bargaining unit for the plan participants, it cannot allege the specific and personal injuries Fentron requires.
 
 
 [7]
 In addition to equitable relief, plaintiffs' complaint seeks legal damages. To the extent plaintiffs seek legal damages, they lack standing. Kuntz, 785 F.2d at 1411
 
 
 [8]
 ERISA Sec. 409(a), 29 U.S.C. Sec. 1109(a), provides as follows:
 Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.
 (Emphasis added.)
 
 
 [9]
 The plan in this case was allegedly "terminated" because one of the fiduciaries caused plan participants and beneficiaries to be paid their actuarially vested plan benefits. Had the plan's assets been insufficient to satisfy its actuarial obligations, presumably the ill-gotten profits could have been returned to the plan to enable the plan to satisfy fully its obligations
 Here, fortunately, the plan's assets were sufficient to satisfy its actuarial obligations. Accordingly, any ill-gotten profits returned to the plan would simply be recycled to the fiduciary pursuant to the amended plan's surplus assets provision.
 
 
 [10]
 "[A] fiduciary ... shall be personally liable ... to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan." ERISA Sec. 409(a), 29 U.S.C. Sec. 1109(a)
 
 
 [11]
 Suits for remedies under ERISA Sec. 409(a), 29 U.S.C. Sec. 1109(a), are brought pursuant to the civil enforcement authority of ERISA Sec. 502(a)(2), 29 U.S.C. Sec. 1132(a)(2)
 
 
 [12]
 "[A] fiduciary ... shall be personally liable ... to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan." ERISA Sec. 409(a), 29 U.S.C. Sec. 1109(a)
 
 
 [13]
 An ERISA plan "participant" may bring a civil enforcement action "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." ERISA Sec. 502(a)(3), 29 U.S.C. Sec. 1132(a)(3) (emphasis added)
 
 
 [14]
 The remedy available under Sec. 409(a) would then be enforced under ERISA Sec. 502(a)(2), 29 U.S.C. Sec. 1132(a)(2). See supra n. 5
 
 
 [15]
 In January 1986, Fieldcrest Mills, Inc. purchased the stock of the Cannon Mills Company (CMC), thereby becoming CMC's corporate successor. Fieldcrest Mills and CMC subsequently merged, creating defendant-appellee Fieldcrest Cannon, Inc. (Fieldcrest)