Michael E. NORMAN and Angelo
Diodati, Plaintiffs,

v.

BROWN, TODD & HEYBURN, et
al., Defendants.

Civ. A. No. 87–3128–S.

United States District Court,
D. Massachusetts.

May 5, 1988.

Erik Lund, Jane E. Sender, Posternak, Blankstein & Lund, Boston, Mass., for plaintiffs.

Francis K. Toto, Carolan, Sullivan & Greeley, Boston, Mass., for defendant Lauxmont Farm.

James J. Clark, pro se.

Robert A. Sherman, Goffin and Krattenmaker, Boston, Mass., for defendant M.B.A. Equity Corp.

James C. Heigham, Ailsa D. Deitemeyer, Choate, Hall and Stewart, Boston, Mass., for defendants Brown, Todd and Heyburn.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

This action is brought by two individual plaintiffs who purchased units in Lauxmont Standardbred Broodmares/1982, an equine tax shelter structured as a limited partnership. Plaintiffs allege that defendants grossly inflated the value of horses sold to investors through a series of related party transfers, and misrepresented the tax advantages of the investment, in violation of federal securities laws, the Racketeer Influenced Corrupt Organizations Act ("RICO"), and state common law. The defendants are the promoters of the investment (Lauxmont Farms and two individual shareholders of Lauxmont Farms), Lauxmont's accountant (James J. Clark), the broker from whom plaintiffs purchased their units (MBA Equity Corporation), and the law firm of Brown, Todd & Heyburn, which provided legal services in connection with the limited partnership offering and provided a tax opinion that was included in the offering circular.

Presently before me are a motion to transfer, submitted by defendants Lauxmont Farms I, Inc., Lauxmont Farms II, Inc., Ronald C. Kohr, and Bradley D. Kohr ("Lauxmont Farm defendants"), and motions to dismiss, submitted by defendants Brown, Todd & Heyburn and James J. Clark. I will address each in turn.

*Motion to Transfer*

The Lauxmont Farm defendants are defendants in a number of actions filed in the United States District Court for the Middle District of Pennsylvania, all of which concern equine tax shelters, although not the limited partnership that is the subject of this action. The Lauxmont defendants have moved to transfer this action to Middle District of Pennsylvania to consolidate it with the already pending cases either in its entirety or, in the alternative, for pretrial purposes. The motion is opposed both by the plaintiffs and by defendant Brown,

Todd & Heyburn, none of whom are parties to the Pennsylvania lawsuits.

The motion to transfer was made pursuant to 28 U.S.C. § 1404(a) (1982):

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

■ In making the determination whether to transfer an action, a district court should consider the convenience of the parties and witnesses, the order in which jurisdiction was obtained by the district court, the availability of documents, and the possibilities of consolidation. *Cianbro Corp. v. Curran–Lavoie, Inc.,* 814 F.2d 7, 11 (1st Cir.1987); *Codex v. Milgo Electric Corporation,* 553 F.2d 735, 737 (1st Cir.), *cert. denied,* 434 U.S. 860, 98 S.Ct. 185, 54 L.Ed. 2d 133 (1977). The defendant that makes the transfer motion bears the burden of showing that the factors in favor of transfer predominate. *Crosfield Hastech, Inc. v. Harris Corp.,* 672 F.Supp. 580, 589 (D.N. H.1987). "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

■ The convenience of the parties and the witnesses in this action does not dictate transferring the case. It would be more convenient for the Lauxmont defendants, who reside in Pennsylvania, to litigate in Pennsylvania. The firm of Brown, Todd & Heyburn, however, is located in Louisville, Kentucky and would prefer the Massachusetts forum. Defendant MBA Equity, the broker, is a Massachusetts corporation. Finally, plaintiffs, who are Massachusetts residents, would certainly be inconvenienced by a transfer. A transfer should not be ordered if the result is merely to shift inconvenience to the plaintiff. *Berrigan v. Greyhound Lines, Inc.,* 560 F.Supp. 165, 169 (D.Mass.1982).

The core of the Lauxmont defendants' argument is that this action should be litigated in the Middle District of Pennsylvania because of its similarity to the cases pending there. They argue that the cases should be consolidated, at least for pretrial proceedings. Where identical actions are proceeding concurrently in two federal courts, threatening duplicative litigation and a waste of judicial resources, the first-filed action is generally preferred in a choice-of-venue decision. *Cianbro Corp. v. Curran–Lavoie, Inc.,* 814 F.2d at 11. Defendants argue that under this "first-filed" rule, this action should be transferred.

What this argument overlooks, however, is the fact that this action is in no way identical to the Pennsylvania lawsuits. The cases in Pennsylvania involve 47 plaintiffs and 36 defendants. Of the parties in this action, only the Lauxmont defendants and their accountant are also parties in the Pennsylvania cases. The two plaintiffs are not involved at all. Furthermore, although the Pennsylvania cases, like this case, involve equine tax shelters, the programs involved are different. The Pennsylvania plaintiffs were investors in approximately eleven separate Lauxmont programs issued between 1978 and 1981. The plaintiffs in this action were investors in one program issued in 1982. This program had its own offering circular, including a tax opinion letter drafted by different attorneys. Different horses were involved.

■ Although the complaints and the claims in this action and the Pennsylvania actions are to some extent similar, there is no identity of parties or issues. Under these circumstances, the "first-filed" rule does not apply. *Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978) (first-filed rule applies when the lawsuits involve the same parties and the same issues), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). Similarly, defendants' argument that the judge in the Middle District of Pennsylvania is "educated," and therefore it would conserve judicial resources to transfer the action, is less persuasive due to the differences between the cases.

Finally, defendants argue that the action should be transferred because the bulk of their documents are located in Pennsylva-

nia, and are already organized and marked for inspection. While this may be true, it is not enough to warrant transferring the action. Presumably all parties will be producing documents, and the documents will be located in Pennsylvania, Massachusetts, Washington, D.C., and Kentucky. The fact that the Lauxmont defendants have an outside copying service that is "prepared to make copies in an effective and cost-efficient fashion," is, considering the proliferation in this country of copying and mail services, not enough to warrant a change of venue. The Lauxmont defendants' motion for transfer is DENIED.

*Motion to Dismiss of Brown, Todd & Heyburn*

**1. Section 17(a) of the Securities Act**

■ Counts I, III and V of the complaint are brought pursuant to section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) (1982). Section 17(a) does not explicitly authorize civil actions.[1] Defendant Brown, Todd & Heyburn argues that Counts I, III, and V must be dismissed because there is no private right of action under section 17(a).

The Supreme Court has repeatedly declined to consider the question of whether an implied right of action exists under section 17(a) of the Securities Act of 1933. *Bateman Eichler, Hill Richards, Inc. v. Berner,* 472 U.S. 299, 304 n. 9, 105 S.Ct. 2622, 2625 n. 9, 86 L.Ed.2d 215 (1985); *Herman & MacLean v. Huddleston,* 459 U.S. 375, 378 n. 2, 103 S.Ct. 683, 685 n. 2, 74 L.Ed.2d 548 (1983); *Aaron v. SEC,* 446 U.S. 680, 689, 100 S.Ct. 1945, 1951, 64 L.Ed.2d 911 (1980); *International Brotherhood of Teamsters v. Daniel,* 439 U.S. 551, 557 n. 9, 99 S.Ct. 790, 795 n. 9, 58 L.Ed.2d 808 (1979); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 733 n. 6,

95 S.Ct. 1917, 1924 n. 6, 44 L.Ed.2d 539 (1975). The First Circuit has also expressly declined to consider the issue. *Cleary v. Perfectune,* 700 F.2d 774, 779 (1st Cir. 1983).

Until recently, there was a clear split in the circuits on the question. The recent trend, however, has been to find that no private right of action exists. The Fifth, Eighth, Ninth, and Eleventh Circuits have all come to this conclusion in well-reasoned opinions. *Currie v. Cayman Resources Corp.,* 835 F.2d 780, 784 (11th Cir.1988); *In re Washington Public Power Supply System,* 823 F.2d 1349 (9th Cir.1987); *Landry v. All American Assurance Co.,* 688 F.2d 381, 389 (5th Cir.1982); *Shull v. Dain, Kalman & Quail, Inc.,* 561 F.2d 152, 159 (8th Cir.1977), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). Even those circuits which had at one point allowed a private right of action have come to doubt the wisdom of their holdings. *Compare Kirshner v. United States,* 603 F.2d 234, 241 (2d Cir.1978), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979), *and Daniel v. International Brotherhood of Teamsters,* 561 F.2d 1223, 1245 (7th Cir.1977), *rev'd on other grounds,* 439 U.S. 551, 98 S.Ct. 1232, 55 L.Ed.2d 761 (1979), *and Newman v. Prior,* 518 F.2d 97, 99 (4th Cir.1975), *with Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 559 n. 3 (2d Cir.1985) *and Teamsters Local 282 Pension Trust Fund v. Angelos,* 762 F.2d 522, 530–31 (7th Cir.1985) *and S.E.C. v. American Realty Trust,* 586 F.2d 1001, 1006 (4th Cir.1978). Finally, the majority of the district courts in this circuit have concluded that no private right of action exists under section 17(a). *See, e.g., Xaphes v. Merrill Lynch, Pierce, Fenner & Smith,* 597 F.Supp. 213, 217 (D.Me.1984); *Kilmartin v. H.C. Wainwright & Co.,* 580

---

**1.** The full text of 15 U.S.C. § 77q(a) (1982) is as follows:

(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or

(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

F.Supp. 604, 609 (D.Mass.1984); *Manchester Bank v. Connecticut Bank & Trust Co.*, 497 F.Supp. 1304, 1314 (D.N.H.1980). *But see Federal Savings & Loan Insurance Corporation v. Shearson American Express*, 658 F.Supp. 1331, 1344 (D.P.R. 1987).

In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court set forth the analysis to be applied in determining whether a private remedy is implicit in a statute not expressly providing one. The *Cort v. Ash* analysis mandates a finding that Congress intended to create a private remedy, and that the private remedy is consistent with the statute as a whole. *See Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 145, 105 S.Ct. 3085, 3091, 87 L.Ed.2d 96 (1985). Section 17(a) does not meet these standards. The language of the section does not reveal a congressional intent to create a private remedy. Furthermore, Congress' inclusion of sections 11 and 12 of the Securities Act of 1933 shows that when Congress wished to provide a private remedy, it knew how to do so and it did so expressly. Finally, implying a private right of action under section 17(a) would be inconsistent with the statutory scheme of the Securities Act. *See In re Washington Public Power Supply*, 823 F.2d at 1354–55 (containing a detailed analysis of the issue under the factors set forth in *Cort v. Ash*); *Landry v. All American Assurance Co.*, 688 F.2d at 389 (same).

In light of the current trend in the circuits and in this district, and because I find the reasoning in cases such as *In re Washington Public Power Supply, supra,* and *Landry v. All American Assurance Co., supra,* persuasive, I decline to find an implied right of action in section 17(a) of the Securities Act of 1933. Defendant's motion to dismiss Counts I, III and V is ALLOWED.

## 2. RICO

Counts IX and X of the complaint are brought pursuant to the Racketeer Influenced Corrupt Organizations statute, 18 U.S.C. § 1962(c) and (d). To state a claim under these subsections, plaintiff must allege: (1) that a person; (2) conducted the affairs; (3) of an enterprise; (4) through a pattern of racketeering activity. *Gaudette v. Panos*, 644 F.Supp. 826, 840 (D.Mass. 1986), *modified,* 650 F.Supp. 912 (D.Mass. 1987). Defendant Brown, Todd & Heyburn has moved to dismiss the RICO claims, arguing that plaintiffs have failed to allege a pattern of racketeering activity.

A "pattern of racketeering" requires at least two acts of racketeering activity. The acts which qualify are enumerated at 18 U.S.C. § 1961(1). The Supreme Court has said that "while two acts are necessary, they may not be sufficient." *Sedima, S.P.L.R. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). The Court stressed the importance of a threat of continuing criminal activity. *Id.* The First Circuit has emphasized that a solitary and isolated criminal act is not transformed into a "pattern of racketeering activity" simply because it is implemented in several steps and involves a number of acts of communication. *Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 31 (1st Cir.1987). RICO is not aimed at the "isolated offender." *Sedima, S.P.L.R. v. Imrex Co.*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14.

To determine if defendant's activities were continuous, I must look at a number of factors, including: (1) the number of independent victims of the alleged activity; (2) the number of participants in the alleged crime; (3) the purpose of the activity; (4) the result of the activity; (5) the method of commission; (6) the number of transactions; (7) whether the scheme is ongoing and open-ended; and (8) the duration of the activity. *Roberts v. Smith Barney Harris Upham & Co., Inc.*, 653 F.Supp. 406, 409–413 (D.Mass.1986). Application of these factors to this case indicates that defendant's activities were not sufficiently continuous to constitute a pattern.

Plaintiffs in this case have not specifically delineated the predicate acts that were allegedly committed by defendants Brown, Todd & Heyburn. They allege, however, that the law firm provided tax advice and

assisted in drafting the Offering Circular for Lauxmont Standardbred Broodmares/1982, and that the information provided was false and misleading. The allegations of defendant's wrongdoing focus on the issuance of a single tax opinion letter which was included in the offering circular. Furthermore, the allegedly fraudulent information was provided solely in connection with one limited partnership. There is no allegation that Brown, Todd & Heyburn was involved in any other tax shelter, or in providing false or misleading information in any other context. Indeed, Brown, Todd & Heyburn is not named as a defendant in any of the lawsuits that are pending in the Middle District of Pennsylvania. Because there is no allegation of ongoing criminal activity, or of a series of fraudulent transactions, plaintiffs have failed to allege a "pattern" of racketeering activity as required by statute. *See Eastern Corporate Federal Credit Union v. Peat, Marwick, Mitchell & Co.*, 639 F.Supp. 1532 (D.Mass.1986).

Defendant Brown, Todd & Heyburn's motion to dismiss Counts IX and X will be ALLOWED.

### 3. Aiding and Abetting Fraud

■ In Count XII, plaintiffs allege that all defendants other than Lauxmont are liable for "aiding and abetting common law intentional fraud." Defendant has moved to dismiss this count for failure to state a claim. It argues that aiding and abetting common law fraud is not a "freestanding tort."

Aiding and abetting is one variation of joint tort liability. *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C.Cir.1983). According to the Restatement of Torts,

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he ...
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself ...

Restatement (Second) of Torts § 876(b) (1979). Massachusetts courts have recognized this theory of liability on a few occa-

sions. *Alberts v. Devine*, 395 Mass. 59, 479 N.E.2d 113, *cert. denied sub nom Carroll v. Alberts*, 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985); *Nelson v. Nason*, 343 Mass. 220, 177 N.E.2d 887 (1961). *See also Payton v. Abbott Labs*, 512 F.Supp. 1031, 1039 (D.Mass.1981) (recognizing "aiding and abetting" as theory of tort liability).

Plaintiffs allege that Brown, Todd & Heyburn knew or should have known of the fraudulent misrepresentations made by Lauxmont, and that the firm knowingly and willingly gave substantial assistance to Lauxmont in its fraudulent actions. On a motion to dismiss, I must accept all plaintiff's allegations as true. Seen in this light, Count XII states a claim upon which relief can be granted. It presents an alternative theory of joint liability. Defendants' motion to dismiss this count is DENIED.

### 4. Innocent Misrepresentation

■ In Count XIV, plaintiff alleges that the defendants' course of conduct constituted innocent misrepresentation, and entitles plaintiff to relief. While Massachusetts has recognized a recission remedy for innocent misrepresentation, it has done so mostly in the context of real estate sales. *See, e.g., Lawton v. Dracousis*, 14 Mass. App. 164, 437 N.E.2d 543 (1982); *Anzalone v. Strand*, 14 Mass.App. 45, 436 N.E.2d 960 (1982). Furthermore, the theory of innocent misrepresentation has only been applied in the context of a dispute between a seller and a buyer of some commodity:

> The cases in which the rule of strict liability for innocent misrepresentation stated in this Section has been applied thus far have generally been confined to sale, rental or exchange transactions between the plaintiff and the defendant.... *The rule stated is limited to the immediate parties to the sale, rental or exchange transaction itself.*

Restatement (Second) of Torts § 552C comments c and d (1979) (emphasis added).

Because Brown, Todd & Heyburn was not a party to any sale of securities in this case, it cannot be held liable on a theory of innocent misrepresentation. Defendant's

motion to dismiss Count XIV is AL-LOWED.

### 5. Conspiracy

█ In Count XV of the complaint, plaintiffs allege that the defendants' actions constituted a conspiracy to defraud the plaintiffs. Defendant argues that this claim must be dismissed because the count merely alleges that the defendants acted jointly in fraudulently inducing plaintiffs to purchase units in the limited partnership, and does not state a claim for conspiracy.

To state a claim for conspiracy under Massachusetts law, plaintiffs must allege more than mere joint tortious activity by the defendants:

> Civil conspiracy is a very limited cause of action in Massachusetts. In order to state a claim of civil conspiracy, plaintiff must allege that defendants, acting in unison, had "some peculiar power of coercion" over plaintiff that they would not have had if acting independently. *Fleming v. Dane*, 1939, 304 Mass. 46, 50, 22 N.E.2d 609.

*Jurgens v. Abraham*, 616 F.Supp. 1381, 1386 (D.Mass.1985). *See also Putnam v. Adams Communication Corporation*, No. 84–0355–S, slip op. at 19–20 (D.Mass. June 15, 1987) [available on WESTLAW, 1987 WL 13262]. The Supreme Judicial Court has said that a plaintiff may state a claim for conspiracy under "exceptional circumstances," although such circumstances are "rare and should be added to with caution." *Fleming v. Dane*, 304 Mass. 46, 50, 22 N.E.2d 609, 611 (1939).

The complaint does not include any allegation that defendants possessed, by force of numbers, any unique power over plaintiffs. Furthermore, plaintiffs have alleged no exceptional circumstances to support their allegations of conspiracy. Because plaintiffs have not stated a claim for the independent tort of conspiracy, defendant's motion to dismiss Count XV is ALLOWED.

### 6. Negligence

█ In Count XVIII of the complaint, plaintiffs allege a cause of action against Brown, Todd & Heyburn for negligence in their preparation of the tax opinion letter which was contained in the offering circular prepared for subscribers to the limited partnership. Defendant argues that because no attorney-client relationship existed between Brown, Todd & Heyburn and the plaintiffs, there can be no cause of action under a negligence theory.

Although as a general rule an attorney's liability for negligence arises out of a duty owed to a client, there are exceptions. Under Massachusetts law, "a non-client may have a cause of action against an attorney if the attorney, in acting for his client, knew that the non-client was relying on his services." *Page v. Frazier*, 388 Mass. 55, 445 N.E.2d 148 (1983). "Foreseeable reliance" is the essence of this cause of action. *Jurgens v. Abraham*, 616 F.Supp. at 1381.

In this case, plaintiffs' allegations are sufficient to support a finding that they relied on the tax opinion letter written by Brown, Todd & Heyburn, and that their reliance was foreseeable. Plaintiffs allege that the defendant law firm knew that the tax opinion would be included in the offering circular, and that the defendant knew that the offering circular would be used for the purpose of inducing investors, including the plaintiffs, to purchase units in the limited partnership. As a general matter, tax opinion letters are drafted so that someone can rely upon them. If Brown, Todd & Heyburn knew, as plaintiff alleges that they did, that the opinion letter would be included in an offering circular, they must have foreseen that it would be relied upon by potential investors. Under the "foreseeable reliance" standard, plaintiff has stated a claim for negligence against defendant Brown, Todd & Heyburn.

Defendant's motion to dismiss Count XVIII is DENIED.

*Motion to Dismiss of Defendant Clark*

Defendant Clark has moved to dismiss Counts I, III, IX, X, XII, XIV, and XV of the complaint. His motion is supported by a memorandum which adopts by reference the arguments made by his co-defendant, Brown, Todd & Heyburn. Counts I, III,

XIV and XV are dismissed for the reasons stated above. The motion to dismiss Count XII is DENIED for the reasons stated above.

Defendant Clark has also moved to dismiss Counts IX and X, the RICO claims. He adopts by reference defendant Brown, Todd & Heyburn's argument that plaintiff failed to allege a pattern of racketeering activity. Plaintiffs allege that defendant Clark advised Lauxmont on how to structure the limited partnership offering, and prepared a financial statement which was included in the offering circular. Once again, they do not specifically delineate in their pleadings the predicate acts. Furthermore, there are no facts in the complaint to support a finding of continuous or ongoing activity. For the reasons stated in the RICO discussion above, defendant Clark's motion to dismiss Counts IX and X is ALLOWED.

*Conclusion*

The motion to transfer submitted by the Lauxmont defendants is DENIED. Defendants Brown, Todd & Heyburn and Clark's motion to dismiss Counts I, III, V, IX, X, XIV and XV of the complaint are ALLOWED. Defendants' motions to dismiss Counts XII and XVIII of the complaint are DENIED.