**FRAMINGHAM UNION HOSPITAL, INC., et al., Plaintiffs,**

v.

**The TRAVELERS INSURANCE COMPANY, et al., Defendants.**

**Civ. A. No. 89–0209–S.**

United States District Court, D. Massachusetts.

Sept. 27, 1989.

Margaret H. Raymond, Stephen K. Ault, Sullivan & Worcester, Boston, Mass., for plaintiffs.

Alan R. Hoffman, Hoffman & Sands, Boston, Mass., for Edgar S. Murray.

Thomas Peisch, Conn, Cavanaugh, Rosenthal & Peisch, Boston, Mass., for David Player.

Jerome P. Facher, James F. Kavanaugh, Merriann M. Panarella, Hale & Dorr, Boston, Mass., for Fantasia.

Paul F. Markham, Boston, Mass., for Clasby and C.T. Garrahan Ins.

Donald B. Gould, Goodwin Procter & Hoar, Boston, Mass., Stewart T. Herrick, Catanzaro, Effren & Herrick, P.C., Ashland, Mass., for Travelers Ins.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS AND FOR SANCTIONS

SKINNER, District Judge.

The plaintiffs Framingham Union Hospital, Inc., ("the Hospital"), its employee benefit plan ("the Plan"), and the Plan trustees, James Kerrigan, Ross Markello and Roger Peloquin ("the Trustees"), allege that defendant insurers and others violated ERISA prohibitions against self-dealing by fiduciaries, the federal racketeering statute, and various Massachusetts state laws, by virtue of their role in the investment of Plan assets in certain insurance policies. This memorandum addresses the defendants' joint motion to dismiss; the separate motions to dismiss of defendants Clasby and C.T. Garrahan Insurance Agency ("C.T. Garrahan"), The Travelers Insurance Company ("The Travelers"), Andrew Fantasia and Fantasia & Co., P.C. (collectively, "Fantasia"), David Player and James Walckner; and Clasby and C.T. Garrahan's motion for sanctions.

Defendants are charged with breach of fiduciary duty and knowing participation in a breach of fiduciary duty under ERISA, 29 U.S.C. § 1001 et seq., racketeering in violation of RICO, 18 U.S.C. § 1961 *et seq.*, violations of M.G.L., ch. 93A, and both federal and Massachusetts common law.[1] Jurisdiction is asserted under § 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), RICO, 18 U.S.C. § 1964(a) and pendent jurisdiction.

This action was filed on January 31, 1989 by two of the current plaintiffs, the Hospital and the Plan. Defendants Clasby and C.T. Garrahan moved to dismiss for lack of subject matter jurisdiction, on the grounds that neither plaintiff is among those authorized to sue for breach of fiduciary duty under § 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2). At the same time, these defendants moved for sanctions, under Fed.R. Civ.P. 11, on the grounds that the claims based on RICO and M.G.L. ch. 93A were not based on reasonable inquiry or well grounded in fact or law.

On February 27, 1989, the plaintiffs amended their complaint, adding the Trustees as plaintiffs, and allegations that since October 7, 1988, by an amendment to the Plan, the Hospital has been the Plan's administrator, and thus a fiduciary under 29 U.S.C. § 1002(21)(A) and entitled to bring an action under § 1132(a)(2).

Defendants have filed a joint motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, pursuant to Fed.R. Civ.P. 12(b)(1) and 12(b)(6). In addition to joining in the arguments made in connection with the joint motion, defendants The Travelers, Fantasia, Player, and Walckner each filed supplemental memoranda advancing separate grounds for dismissal of the claims against them.[2]

All of these motions, including the motion for sanctions, are dealt with in this memorandum.

### Allegations of the Complaint

For purposes of a motion to dismiss, I must take the allegations of the complaint

---

**1.** Counts I, III, V and VII of the Amended Complaint charge breach of fiduciary duties by Clasby, Murray, The Travelers, Player and Walckner. Counts II, IV, VI, VIII and IX charge knowing participation in breach of fiduciary duty by all eight defendants. Count X charges Fantasia with malpractice. Counts XI and XV allege negligence by Travelers and seek rescission of the policies. Count XII alleges violations of M.G.L. ch. 93A by all of the defendants except Walckner. Counts XIII and XIV charge RICO violations by all defendants except Fantasia.

**2.** (1) The Travelers and Walckner move to dismiss for failure to adequately particularize the alleged fraud, under Fed.R.Civ.P. 9(b);

(2) The Travelers moves to dismiss the RICO claim on the grounds that plaintiffs failed to allege the requisite scienter for direct liability and that vicarious liability is unavailable;

(3) Walckner moves to dismiss Count VII alleging breach of fiduciary duty on the grounds that he was not a Plan fiduciary;

(4) Fantasia moves to dismiss on the grounds that plaintiffs fail to allege it "knowingly participated" in a breach of fiduciary duty, and that the claims based on ch. 93A and accountant malpractice are preempted;

(5) Player moves to dismiss the RICO claims against him on the grounds of his limited participation in the alleged scheme.

as true, allowing dismissal only when it is plain that the plaintiffs can prove no set of facts entitling them to relief. *See, e.g., Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Roeder v. Alpha Industries, Inc.,* 814 F.2d 22, 25 (1st Cir. 1987).

The allegations of the Amended Complaint are as follows:

The Plan was established by the Hospital in 1966, for the benefit of Hospital employees. The Plan was administered by its own board of Trustees during the events underlying this suit. On October 7, 1988, the terms of the Plan were amended to confer responsibility for its administration on the Hospital, which then appointed a committee of individuals to control its day-to-day operations.

Clasby, an insurance broker and the principal of C.T. Garrahan, was president of the Hospital's board of trustees from 1982–1988. From July 15, 1983 through August 31, 1983, Clasby was also a trustee of the Plan.

Walckner was the Hospital's Executive Vice-President at all relevant times, until his retirement in February of 1987.

In late 1981 and 1982, the Hospital considered funding the Plan through investing in insurance policies on the lives of Hospital employees, with death benefits paid to be used to pay premiums on the policies and to fund Plan benefits. The idea was allegedly originated by "either or both of" defendants Walckner and Clasby.

Clasby contacted Player and Murray, also insurance agents, to assist him in devising an insurance program for presentation to the Hospital and the Plan. Murray was employed by The Travelers, and proposed to the company that it underwrite the program. As had other insurance agencies to whom the idea was presented, The Travelers expressed concern about the suitability of the program for an ERISA plan. Murray assured his employer that the Plan need not be treated as a qualified ERISA plan, and that the proposal need not be evaluated on this basis. The Travelers agreed to underwrite the program.

Murray, Clasby, Player and Fantasia, an accountant who served as the Plan's auditor from 1982–1987, worked together to prepare the proposed insurance program—a program which the plaintiffs allege violated applicable ERISA requirements. They first described the program to Walckner, and then, on July 15, 1982, presented it to the finance committee for the Hospital's board of trustees. Also in attendance were certain Hospital management personnel, including Walckner. Clasby did not attend the meeting. The presenters falsely represented that the program would comply with applicable ERISA requirements, and that it would be "self-funding" within a few years. They failed to disclose high commissions and bonuses to be paid Clasby, Murray and Player, and the fact that several other insurers had refused to underwrite the program because of doubts as to its legitimacy. At this meeting, Fantasia submitted a memorandum on prohibited transactions under ERISA, but failed to disclose that the proposed insurance program would be a prohibited transaction.

The Hospital approved and implemented the program in August of 1982, and 147 life insurance policies on Hospital employees were issued to the Hospital, and then assigned to the Plan in September of 1982. The premiums for the initial year, 1982–83, were paid by the Hospital. Premiums for all subsequent years, 1983–88, were paid by the Plan.

In February of 1984, after discussing the matter with Walckner, Murray proposed to the Plan trustees that the policies be converted from whole life to universal life. Murray allegedly failed to disclose certain potential disadvantages of the Plan of conversion, *i.e.,* that universal life policies offered a variable rather than fixed interest rate on accrued cash value, or that both he and Clasby would receive increased commissions and bonuses as a result of the conversion. The Plan trustees approved the conversion.

The policies were renewed annually until 1988, when a Department of Labor investigation of the Plan alerted the Hospital and

the Trustees that Clasby and C.T. Garrahan had received commissions on the purchase of the insurance.

The premiums paid by the Hospital in 1982–83 amounted to $551,161. Clasby's firm, C.T. Garrahan, received commissions of $149,145 based on securing the policies, $60,000 of which was remitted to Player. Premiums paid by the Plan from August 1983—August 31, 1988, totalled $2,217,899. C.T. Garrahan received $735,050 in commissions attributable to these payments. Murray received bonuses in unspecified amounts from The Travelers based on the policies.

The plaintiffs allege that Clasby's involvement of Player in the project and his absence from the July meeting were contrived to conceal his own interest in the deal. Walckner is alleged to have been aware of the involvement of Clasby and C.T. Garrahan, and to have failed to divulge this to the Hospital or the Plan—assertedly in exchange for Clasby's secretly executing a favorable termination agreement with him in December of 1984.

### Rulings of Law

Defendants move to dismiss on the grounds that (1) the allegations of fraud which are the basis of this action, lack the requisite particularity to satisfy Rule 9(b); (2) there is no pattern of racketeering to found a RICO claim; (3) the claims based on ERISA should be dismissed for lack of standing and failure to state a claim, and (4) the state law counts are preempted by ERISA.

### A.  *Lack of Particularity*

█ Defendants seek dismissal of the Amended Complaint on the grounds that the allegations of fraudulent misrepresentations are not alleged with sufficient particularity to meet the requirements of Fed. R.Civ.P. 9(b).

Rule 9(b) provides that "[i]n all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity." This rule is strictly construed in this circuit. *See, e.g., New England Data Services, Inc. v. Becher,* 829

F.2d 286, 288 (1st Cir.1987); *Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir.1985); *Wayne Investment, Inc. v. Gulf Oil Corp.,* 739 F.2d 11, 14 (1st Cir.1984).

The purposes behind the requirement of particularity are (1) to place defendants on notice and enable them to prepare meaningful defenses to charges of fraud; (2) to prevent the use of conclusory allegations of fraud as a basis for strike suits and fishing expeditions; and (3) to protect defendants from groundless charges which might damage their reputations. *See, New England Data Services, Inc., supra,* 829 F.2d at 289; *Hayduk v. Lanna, supra,* 775 F.2d at 443. In considering a motion to dismiss, these considerations must be weighed against the general policy of the federal rules in favor of notice pleading. *See, e.g., New England Data Services, supra,* 829 F.2d at 292.

The fraudulent misrepresentations which underlie the complaint amount to inadequate and misleading statements to the Hospital and the Fund concerning the benefits of investing in the life insurance policies. Defendants Clasby, Murray, Player, C.T. Garrahan, and Fantasia are alleged to have actively participated in developing the investment program, and Murray, Player and Fantasia with presenting it to the Hospital board. Murray is charged with deceiving The Travelers by representing to it that the Fund need not be treated as a qualified ERISA plan, and with making the 1984 conversion proposal to the Fund. The approximate dates, substance and source of the alleged misrepresentations are identified in the complaint. In addition, plaintiffs charge that Murray, Player, Fantasia and Walckner knew of the involvement of Clasby and C.T. Garrahan, and that their concealment of this was a fraudulent omission.

In my opinion these allegations are sufficiently specific to satisfy Rule 9(b).

### B.  *RICO Claims.*

Counts XIII and XIV of the Amended Complaint allege violations of RICO, 18 U.S.C. § 1962. Defendants move to dis-

# 1484

miss on the grounds that the plaintiffs have failed to allege the requisite pattern of racketeering activities.

To state a claim under RICO, the plaintiffs must allege: (1) that a person; (2) conducted the affairs; (3) of an enterprise; (4) through a pattern of racketeering activity. *See, e.g., Norman v. Brown, Todd & Heyburn*, 693 F.Supp. 1259, 1263 (D.Mass. 1988).

RICO is directed at threats of continuing criminal activity, and not the isolated offender. *See, e.g., Sedima, S.P.L.R. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346. To support a racketeering claim, plaintiffs must allege at least two predicate acts, although this will not necessarily be sufficient to establish a pattern. *See, e.g., Roeder v. Alpha Industries, Inc.*, 814 F.2d 22, 30 (1st Cir.1987). The predicate acts must be sufficiently related to constitute an ongoing and continuous enterprise; but they must also be sufficiently distinct to comprise a pattern, as opposed to a single fraudulent act perpetrated in a series of steps. *See, e.g., Roeder, supra; Roberts v. Smith Barney, Harris Upham & Co., Inc.*, 653 F.Supp. 406, 413 (D.Mass.1986).

The Court of Appeals for the First Circuit has adopted a flexible test of whether the acts alleged are sufficiently related and continuous to evidence a pattern. *Roeder, supra*, 814 F.2d at 31. The factors to be looked at to determine whether defendants' activities are continuous include (1) the number of independent victims; (2) the number of participants; (3) the purpose of the activity; (4) the result of the activity; (5) the method of commission; (6) the number of transactions; (7) whether the scheme is ongoing and open-ended; and (8) the duration of the activity. *See, e.g., Norman v. Brown, Todd & Heyburn*, 693 F.Supp. 1259 (D.Mass.1988). Application of these factors to the conduct alleged in this case persuades me that no RICO claim can be maintained.

The number of independent victims is low. While the victims arguably include all the Plan's beneficiaries, they are not "independent." At best, two entities were defrauded, the Plan and the Hospital, but even these victims suffered from the same wrongful conduct. While the activity stretched over a period of 7 years, and involved several wrongdoers, its focus was a single bundle of insurance policies taken out in 1982, albeit renewed and converted in subsequent years. While continuous acts of concealment and a series of unlawful payments are alleged, there were only two episodes of affirmative misrepresentation, the 1982 initial enrollment and the 1984 policy conversion.

I rule that the allegations fail to establish a sufficient pattern of racketeering activity to sustain the RICO claims. Counts XIII and XIV of the Amended Complaint will be dismissed.

## C. *ERISA Claims.*

Defendants move jointly to dismiss the ERISA claims on the grounds that (1) neither of the original plaintiffs—the Hospital and the Plan, are authorized to sue under the statute, and (2) the Plan has suffered no "injury in fact" which would confer standing on any of the current plaintiffs to sue on its behalf. In addition, Walckner moves to dismiss the ERISA claims against him as barred by statute of limitations. Walckner and Fantasia argue failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6), as to one of the counts against each one of them.

### 1. Parties Authorized to Sue

Defendants argue that, assuming the RICO claims are deficient, the court lacked subject matter jurisdiction over this action when it was filed, because neither of the original plaintiffs—the Hospital and the Fund, were authorized to sue under § 502(a) of ERISA, 29 U.S.C. § 1132(a). Therefore, they argue that the court lacks jurisdiction over both the original complaint and any purported amended pleading, and the action must be dismissed.

Section 502(a) identifies those persons authorized to bring suit for breach of fiduciary duty under ERISA as "the Secretary, or a participant, beneficiary or fiduci-

ary" of a plan. Neither an ERISA plan, nor an employer which is not a fiduciary is authorized to sue by the statute. *See, e.g., Grand Union Co. v. Food Employers Labor Relations Assoc.,* 808 F.2d 66 (D.C.Cir. 1987) (employer not eligible to sue); *Pressroom Unions–Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889, 893 (2d Cir.1983), *cert. denied,* 463 U.S. 1233, 104 S.Ct. 26, 77 L.Ed.2d 1449 (1983) (employee benefit fund not authorized to sue in its own name).

While there is some authority that Congress did not intend this list of authorized plaintiffs to be exhaustive, *see, e.g., Fentron Indus. v. National Shopmen Pension Fund,* 674 F.2d 1300 (9th Cir.1982) (employers may sue); *Coleman Clinic, Ltd. v. Massachusetts Mutual Life Insurance Co.,* 698 F.Supp. 740, 744–45 (C.D.Ill. 1988) (fund has standing to sue), most courts have agreed, I believe correctly, that entities not among those enumerated have no right to sue under ERISA. *See, e.g., Giardono v. Jones,* 867 F.2d 409, 413 (7th Cir.1989) (employer's right to sue limited to actions brought in a fiduciary capacity); *Grand Union Co. v. Food Employers Labor Relations Assoc., supra; Hermann Hospital v. MEBA Medical & Benefits Plan,* 845 F.2d 1286, 1287–89 (5th Cir.1988); *Pressroom Unions–Printers League Income Security Fund v. Continental Assurance Co., supra; International Union of Bricklayers v. Menard & Co.,* 619 F.Supp. 1457 (D.R.I.1985), per Selya, D.J.

There is no dispute that the Trustees, who were added as parties by the Amended Complaint, are entitled to sue as fiduciaries. The defendants contend that if the original complaint was not within the court's subject matter jurisdiction, a subsequent amendment adding proper plaintiffs cannot save the action, because if subject matter jurisdiction is lacking at the commencement of a suit, it cannot be cured by the later intervention of a plaintiff with a sufficient claim. *See, e.g., Pressroom Unions–Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889, 893 (2d Cir.1983); *compare, Newman–Green, Inc. v. Alfonzo–Larrain,* —— U.S. ——, 109 S.Ct. 2218, 2220, 104 L.Ed.2d

893 (1989) (nondiverse dispensable party may be dismissed to preserve jurisdiction); *Margaret Hall Foundation v. Atlantic Financial Management,* 572 F.Supp. 1475, 1485 (D.Mass.1983) (permitting amendment adding plan administrators as plaintiffs).

Title 28 U.S.C. § 1653 authorizes amendments to cure defects in allegations of jurisdiction, and is broadly applied to avoid dismissal of suits on technical grounds. The statute only authorizes amendments to cure defects in the manner in which jurisdiction is alleged, *see, e.g., Zelaskowski v. Johns–Manville, Corp.,* 578 F.Supp. 11, 17 (D.N.J.1983), and not those which seek to create jurisdiction which did not in fact exist when the action was filed. *See, e.g., Newman–Green, Inc. v. Alfonzo–Larrain, supra; Pressroom Unions–Printers League Income Security Fund v. Continental Assurance Co., supra; see also, Field v. Volkswagenwerk AG,* 626 F.2d 293, 306 (3rd Cir.1980) (substitution of another administratrix to cure defect in diversity not permitted under § 1653).

Defendants argue that both the amendment alleging that the Hospital is a fiduciary and that adding the Trustees, represent attempts to cure defects in actual jurisdiction, rather to remedy merely technical deficiencies in allegations of jurisdiction.

■ The Amended Complaint alleges that the Hospital, one of the original plaintiffs, has been a plan sponsor and administrator since October 7, 1988, with responsibility for overseeing the management of the plan and the channeling of its assets. If these allegations are taken as accurate, as they must be when considering a motion to dismiss, the Hospital is currently a fiduciary and entitled to sue under § 1132(a). *See, e.g., Ed Miniat, Inc. v. Globe Life Insurance Group, Inc.,* 805 F.2d 732, 733 (7th Cir.1986), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). The Hospital acquired its fiduciary status in October of 1988, well before the complaint was filed. Therefore, the amendment speaks to conditions which actually obtained when the action was commenced,

**1486**

albeit inadequately pleaded, and is authorized by § 1653.

◼ The defendants maintain that even if the Hospital is a fiduciary in some respects, it is not one for purposes of this action because (1) its fiduciary responsibilities do not bear a sufficient nexus to the violations alleged, and (2) it was not a fiduciary during the activity underlying this action.

Defendants cite *Coleman Clinic, Ltd. v. Massachusetts Mutual Life Insurance Co.,* 698 F.Supp. 740, 743 (C.D.Ill.1988), for the proposition that there must be a nexus between the misconduct alleged and the particular functions which give rise to the employer's fiduciary status. In *Coleman,* a suit against an insurer which failed to prepare plan termination documents in a timely manner, the court found that the plan and its trustees were entitled to sue, but dismissed the employer's ERISA claim for lack of standing. The court cited seventh circuit precedent requiring the nexus described as one reason for its finding that the employer was not a fiduciary eligible to sue, but also relied on a plan provision delegating the employer's administrative duties entirely to the plan's pension committee. The court found that because the employer had effectively delegated its fiduciary responsibilities and liability to the committee, it could not then invoke its fiduciary status to support its right to sue.

At this stage in the action, the only record of the Hospital's responsibilities with respect to Plan administration is the allegations of the Amended Complaint. Even if I were to adopt the narrow test employed in *Coleman Clinic,* these allegations do not demonstrate that the Hospital has so completely delegated its responsibilities and duties that I must find that it abdicated its fiduciary position.

◼ Defendants assert that only employers who were fiduciaries when an underlying violation occurred have standing to sue under § 502(a). This contention is unsupported and, I do not accept it. The relevant period for determining a person's capacity to sue on behalf of a Plan is when an action is filed, and not when the underlying violation occurred. The plaintiff's position is the same as that of any other successor trustee.

I find that there is a sufficient basis in the complaint to establish that the Hospital is a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A), and is therefore authorized to sue under ERISA.

◼ In light of my decision that the Hospital has standing as a fiduciary, I need not decide whether I would have the power to entertain this action were the addition of the Trustees the sole basis for subject matter jurisdiction. *Compare, Pressroom Unions–Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889, 893 (2d Cir.1983) (denying leave to amend to add plan beneficiaries in place of fund, which was not entitled to sue), and *Margaret Hall Foundation v. Atlantic Financial Management,* 572 F.Supp. 1475, 1485 (D.Mass.1983) (permitting amendment adding plan administrators as plaintiffs). In any case, I will allow the amendment adding them as within the scope of § 1653.

A Plan can only act through the individuals who administer it, and the plaintiffs represent that the Trustees are the same persons who authorized filing this action on behalf of the Plan. The Trustees and the Plan are distinct in name only, and even if the Hospital were found to lack standing, I would decline to attach draconian and incurable consequences to the fact that the original complaint did not name them properly. *See, e.g., Saramar Aluminum v. Pension Plan for Employees,* 782 F.2d 577, 581 (6th Cir.1986).

Under the circumstances, I believe that it is both consistent with practical reality and justice to permit the addition of the Trustees as within the scope of § 1653. While the plaintiffs are entitled to amend their complaint, pursuant to Fed.R.Civ.P. 15(a), ordinarily the correct mechanism for adding a party is by court order, pursuant to Rule 21. *See, e.g., Ed Miniat, Inc. v. Globe Life Insurance Group, Inc.,* 805 F.2d 732, 733 (7th Cir.1986), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). Such an order may issue either on

motion, or on the court's own initiative. *Compare, Newman–Green, Inc. v. Alfonzo–Larrain,* —— U.S. ——, 109 S.Ct. 2218, 2220, 104 L.Ed.2d 893 (1989) (court of appeals may issue Rule 21 order dismissing non-diverse party without remand). The Trustees were not added to the action as new claimants, but as fiduciaries suing on behalf of the Plan. Seen in this light, their addition is a nominal change, and may not strictly require an order under Rule 21. However, in the interests of tidiness, one will issue forthwith.

The Plan itself is not authorized to bring an action under § 504(a) of ERISA, and will be dismissed from the ERISA claims. *See, e.g., Pressroom Unions–Printers League Income Security Fund v. Continental Assurance Co.,* 700 F.2d 889, 893 (2d Cir.1983).

## 2. Injury in Fact

■ Defendants argue that the plaintiffs lack standing to sue on behalf of the Plan, because they are unable to point to any "injury in fact" suffered by the Plan as a result of the defendants' conduct. Their reasoning is that since the terms of the Plan oblige the Hospital to make up any investment shortfall, it is the only entity arguably injured by the defendants' conduct.

Section 409(a) of ERISA not only requires a fiduciary to make good any losses suffered by a plan in connection with his breach of fiduciary duty, but also to disgorge any profits realized through the abuse of his position of trust. 29 U.S.C. § 1109(a)[3]; *see, e.g., Amalgamated Clothing & Textile Workers Union, AFL–CIO v. Murdock,* 861 F.2d 1406 (9th Cir.1988) This provision renders any gain a fiduciary acquires through improper use of plan assets forfeit, irrespective of any proof of actual financial loss to the fund or its beneficiaries. *See, e.g., Amalgamated Clothing, supra,* 861 F.2d at 1418 (fact that

beneficiaries were paid vested benefits did not deprive them of standing to sue for misuse of fund assets); *see also, Coleman Clinic, Ltd. v. Massachusetts Mutual Life Insurance Co.,* 698 F.Supp. 740, 745 (C.D. Ill.1988).

The plaintiffs have alleged that defendants were improperly enriched through their receipt of commissions, premiums and bonuses. It is irrelevant for purposes of this motion on whom the financial loss from this misconduct may ultimately fall. I rule that these allegations are sufficient to establish standing to sue under ERISA.

## 3. Fantasia and Walckner Motions

### a) *Statute of Limitations*

■ Walckner moves for dismissal of the ERISA claims against him on the grounds that they are time barred under ERISA, 29 U.S.C. § 1113.

Actions for breach of fiduciary duty under ERISA must be filed within 6 years after the last act or omission giving rise to liability, or within 3 years after the plaintiff did or should have discovered the breach. When fraud or concealment are alleged, the statute fixes a limitations period of six years from discovery of the breach. 29 U.S.C. § 1113.

This action was filed January 31, 1989. The plaintiffs have alleged fraudulent concealment, and represent that they discovered Clasby and C.T. Garrahan's conduct in 1988 as a result of a Department of Labor investigation. On this basis, the action is clearly timely. Even absent fraudulent concealment, the action is timely, since Walckner is charged with continuing failure to disclose Clasby's involvement, in payment for which Clasby allegedly executed the favorable termination agreement in December of 1984. This failure to disclose and the effect thereof continued for the life of the policies, from 1982 to 1988.

---

**3.** Section 1109 provides, in relevant part, as follows:

"(a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personal-

ly liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of the assets of the plan by the fiduciary...."

### b) *Fiduciary Duties*

ERISA defines an individual as a fiduciary to the extent he exercises discretionary control or authority over the plan, its assets, or its administration or renders investment advice, 29 U.S.C. § 1002(21)(A). The statute "creates an extremely specific scheme of duties and liabilities for fiduciaries" and limits their liability to the period in which they were fiduciaries. *See,* 29 U.S.C. § 1109; *see, e.g., O'Toole v. Arlington Trust Co.,* 681 F.2d 94, 96 (1st Cir.1982); *Coleman Clinic, Ltd. v. Massachusetts Mutual Life Insurance Co.,* 698 F.Supp. 740, 746 (C.D.Ill.1988) (liability of fiduciaries limited to the period in which they were fiduciaries.)

■ Non-fiduciaries acting unilaterally are not liable under § 1109. *See, e.g., O'Toole, supra.* Nor are such persons liable under the statute for their merely negligent failure to discover and prevent breaches of fiduciary duty by ERISA fiduciaries. *See, e.g., Painters of Philadelphia District Council No. 21 Welfare Fund v. Peat, Marwick, Main & Co.,* 10 Empl.Ben.Cas. 1503, 1508, 1988 WL 100757 (E.D.Pa.1988). Some courts have, however, fashioned a federal common law theory of liability holding non-fiduciaries liable for knowing collaboration in a breach of fiduciary duty by an ERISA fiduciary:

> "ERISA does not expressly create a cause of action for claims against non-fiduciaries based on their involvement in a breach by a fiduciary of his fiduciary duties. However, courts have held that plan beneficiaries and the Secretary may bring a claim against a non-fiduciary who knowingly participates in a fiduciary's breach of fiduciary duty."

*McLaughlin v. Biasucci,* 688 F.Supp. 965, 967 (S.D.N.Y.1988) (citing cases); *Painters of Philadelphia District Council No. 21 Welfare Fund v. Peat, Marwick, Main & Co.,* 10 Empl.Ben.Cas. 1503, 1507 (E.D.Pa. 1988); *cf., Nieto v. Ecker,* 845 F.2d 868, 873 (9th Cir.1988) (holding that non-fiduciary could not be sued for aiding and abetting breach of fiduciary duty under § 409(a)).

Defendants Clasby, Player, Murray and The Travelers are alleged to have rendered investment advice to the Plan, and to be its fiduciaries on this basis. Walckner and Fantasia are both charged with "knowing participation" in the breaches of fiduciary duty by these defendants. Walckner is also charged with direct fiduciary liability by virtue of his "discretionary authority or control respecting the management or disposition of Plan assets."

### i) Count VII

■ Walckner moves to dismiss Count VII alleging direct fiduciary liability, on the grounds that the allegations of the complaint do not support an inference that he was ever a fiduciary of the Plan.

At all relevant times Walckner was an employee of the Hospital, an entity which did not acquire the status of Plan fiduciary until October of 1988. The only investment decisions he is alleged to have made were with respect to assets of the Hospital, not those of the Plan. Walckner was never a Fund trustee, nor was he ever employed by the Fund in any managerial or other capacity.

The complaint makes a conclusory recitation that Walckner was a fiduciary with respect to the Plan "by virtue of his discretionary authority or control respecting the management or disposition of Plan assets," but supplied no factual allegations to support the assertion that he possessed or exercised such power.

I find that the allegations of the Amended Complaint do not establish that Walckner was ever himself a Plan fiduciary. Therefore, his motion to dismiss will be allowed as to Count VII.

### ii) Count IX

■ Fantasia moves to dismiss Count IX charging him with "knowingly participating" in a breach of fiduciary duty, on the grounds that his conduct is not embraced by this cause of action. Fantasia cites *Painters of Philadelphia District Council No. 21 Welfare Fund v. Peat, Marwick, Main & Co.,* 10 Empl.Ben.Cas. 1503 (E.D.Pa.1988) as authority that mere negligence by an auditor cannot support a

claim for "knowing participation." While this is an accurate statement of the rule laid down in that action, it does not apply to this case. Fantasia is not merely alleged to have failed to investigate and uncover the wrongdoing of others, as was the defendant auditor in *Painters v. Peat, Marwick, supra*, he is charged with actively assisting in the formulation and presentation of the investment program at issue, and with providing an opinion that the proposal was not a prohibited transaction under ERISA. The allegations of Fantasia's conduct demonstrate involvement which, if proved, is sufficiently knowing and direct to support the claim.

### D. *Preemption*

■ Defendants move to dismiss the state law claims, Counts X, XI, XII and XV of the Amended Complaint[4] on the grounds that they are preempted by § 514(a) of ERISA, 29 U.S.C. § 1144(a). *See, Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Count X charges Fantasia with accountant malpractice. Count XII charges defendants with unfair and deceptive practices in violation of M.G.L. ch. 93A, by virtue of their misrepresentations made to induce plaintiffs to purchase, renew and convert the policies. Counts XI and XV charge The Travelers with negligent supervision of its agent, Murray, and seek rescission of the policies.

The plaintiffs argue generally that the challenged claims are not preempted because they do not "relate to" the plan, within the meaning of § 514(a). In the alternative, plaintiffs argue that Counts XI and XII relate to the regulation of insurance and are exempted from preemption by § 514(b)(2)(A) of ERISA, 29 U.S.C. § 1144(b)(2)(A).

Section 514(a) preempts any and all state laws and causes of action which "relate to" employee benefit plans. 29 U.S.C. § 1144(a). Preemption is broadly applied, and state laws which affect the interpreta-

tion or implementation of a plan are preempted even if not inconsistent with ERISA's substantive provisions, *see, e.g., Mackey v. Lanier Collections Agency & Service*, 486 U.S. 825, 108 S.Ct. 2182, 2183, 100 L.Ed.2d 836 (1988); *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2388–89, 85 L.Ed.2d 728 (1985), or specifically designed to target employee benefit plans. *See, e.g., Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 47–48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39; *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 98, 103 S.Ct. 2890, 2900–01, 77 L.Ed.2d 490 (1983). When claims are preempted, actions based on them are preempted even when the plaintiff is not an entity authorized to sue under ERISA. *See, e.g., Hermann Hospital, supra.*

ERISA does not automatically preempt all actions to which a pension fund is a party or in which fund assets have been misused or misappropriated. *See, e.g., O'Toole v. Arlington Trust Co.*, 681 F.2d 94, 97 (1st Cir.1982). Certain state laws which affect ERISA funds are not reached by § 514(a) because they have too "tenuous, remote and peripheral" an impact on the fund to be preempted. *See, e.g., Mackey v. Lanier Collections Agency & Service*, 486 U.S. 825, 108 S.Ct. 2182, 2183, 100 L.Ed.2d 836 (1988) (garnishment laws); *Aetna Life Insurance Company v. Borges*, 869 F.2d 142, 145 (2d Cir.1989) (Connecticut escheat law not preempted); *Hermann Hospital v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1290 (5th Cir.1988).

The intent of Congress in enacting ERISA was "to provide for a uniform source of law in the areas of vesting, funding, insurance and portability standards, for evaluating fiduciary conduct, and for creating a single reporting and disclosure system in lieu of burdensome multiple reports." *O'Toole, supra* (quoting from legislative history). Claims which do concern these subjects, even if they are based on the invasion of the corpus of a fund, are not preempted. *See, e.g., Fort Halifax*

---

**4.** Defendants also argued that the "knowing participation" claims were preempted. As plaintiffs base these claims on federal common law,

rather than state law, preemption doe not apply. *See, discussion, supra.*

*Packing Company, Inc. v. Coyne,* 482 U.S. 1, 15–16, 107 S.Ct. 2211, 2219, 96 L.Ed.2d 1 (1987); *O'Toole, supra.*

"[L]aws that have been ruled preempted are those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee. Those that have not been preempted are laws of general application—often traditional exercises of state power or regulatory authority—whose effect on ERISA plans is incidental."

*Aetna Life Insurance Company v. Borges,* 869 F.2d 142, 146 (2d Cir.1989).

Preemption is broadly construed in light of the objective of Congress to establish regulation of pension plans as exclusively a federal concern. *See, e.g., Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). At the same time, however, there is an assumption that the historic police powers of the States are not superseded by a federal enactment, unless this is clearly Congress' intent. *See, e.g., Aetna Life Insurance Company v. Borges,* 869 F.2d 142, 145 (2d Cir.1989); *see, e.g., McLaughlin v. Biasucci,* 688 F.Supp. 965, 968 (S.D.N.Y.1988) (attorney malpractice).

Section 502(d) of ERISA, 29 U.S.C. § 1132(d), the "sue and be sued" clause, contemplates suits by and against ERISA plans for "run-of-the-mill state law claims such as unpaid rent, failure to pay creditors, and torts" and preemption does not preclude such claims. *Mackey v. Lanier Collections Agency & Service,* 486 U.S. 825, 108 S.Ct. 2182, 2187, 100 L.Ed.2d 836 (1988); *see, e.g., Drinkwater v. Metropolitan Life Insurance Co.,* 846 F.2d 821, 825 (1st Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988) (spouse's claim for emotional distress in connection with benefits denial not preempted).

In addition to those causes of action which preemption does not reach, because they are not related to a plan, certain laws which do "relate to" a plan, are nonetheless exempted from preemption by Congress, *i.e.,* laws regulating insurance, under § 514(b)(2)(A) of ERISA, 29 U.S.C. § 1144(b)(2)(A), *see, e.g., Metropolitan Life Insurance Co., supra.* ERISA makes a distinction between plans which purchase insurance and those which self-insure, leaving the former indirectly subject to state laws which regulate the insurance industry, while the latter are exempt from such regulation. *See, e.g., Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 747, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985); *Reilly v. Blue Cross & Blue Shield United of Wisconsin,* 846 F.2d 416, 425 (7th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988).

Count X of the Amended Complaint alleges accountant malpractice by Fantasia, by virtue of his inadequate performance of his professional duties in connection with the transactions at issue. Counts XI, XII and XV allege misrepresentations made in connection with issuance of the insurance policies. None of these causes of action purports to impact the administration of the Plan, provision of benefits or any like concern of ERISA. The possibility that the terms of ERISA or the Plan may be evidence of certain aspects of the claim does not mandate their preemption. *See, e.g., Drinkwater v. Metropolitan Life Insurance Co., supra,* (claim for emotional distress in connection with withholding of spouse's benefits not preempted).

I find that Count X for accountant malpractice, Count XI seeking rescission and Counts XII and XV alleging violations of Ch. 93A and common law negligence, do not "relate to" the plan, and are not preempted under § 514(a) of ERISA. As I find that these claims are not reached by the preemption provision, I need not address the plaintiffs' alternative argument that certain of the claims are exempted from preemption by § 514(b)(2)(A).

**E. *Motion for Sanctions***

Defendants Clasby and C.T. Garrahan move for sanctions, pursuant to Fed.R. Civ.P. 11, on the grounds that the claims based on violations of M.G.L. ch. 93A and

RICO are not based on reasonable inquiry, are not well grounded in fact or law, and were made solely to harass and embarrass the defendants.

Defendants cite no law in support of their motion, but submit copies of several recent newspaper articles reporting the events underlying this suit, and an affidavit by their attorney relating his dealings with plaintiffs' counsel before the action was filed. I see no support in any of these submissions for the charges of bad faith or harassment. Neither do I find the claims at issue so inadequate as to warrant the imposition of Rule 11 sanctions. Accordingly, the motion will be denied.

Accordingly, and for the foregoing reasons, the motions to dismiss Counts VII, XIII and XIV of the Amended Complaint are ALLOWED. The motions to dismiss Counts I, II, III, IV, V, VI, VII, VIII, and IX are ALLOWED as to the plaintiffs' Plan, only. In all other respects, the motions are DENIED. The motion for sanctions is DENIED.

The Trustees are hereby ORDERED joined to the action as plaintiffs, effective February 27, 1989.